HARRINGTON GLEN, INC., A NEW JERSEY CORPORATION, *ET AL.*, PLAINTIFFS-APPELLANTS, v. THE MUNICIPAL BOARD OF ADJUSTMENT OF THE BOROUGH OF LEONIA, *ET AL.*, DEFENDANTS-RESPONDENTS.

Argued January 8 and 9, 1968—Decided June 3, 1968.

Mr. *Paul A. Wurtzel* argued the cause for appellants (*Mr. David S. Greenberg,* attorney).

Mr. *Donald A. Sterling* argued the cause for respondents.

The opinion of the court was delivered by

FRANCIS, J. This is a zoning variance case. The Law Division reversed the denial of the variance application by the Board of Adjustment. In turn the Appellate Division reversed the Law Division holding that on the record presented plaintiffs had not shown that the action of the Board was arbitrary or unreasonable. This Court granted certification. 49 *N. J.* 369 (1967).

The lot in question is located on the easterly side of Glenwood Avenue, Leonia, N. J. It has a frontage of 40 feet on Glenwood Avenue and a depth of 122 feet; the total area is 4880 square feet. The northern extremity of Glenwood Avenue dead-ends at the Englewood Golf Course. Plaintiffs' lot is within the block of Glenwood Avenue which terminates at the golf course. It is separated from the golf course by four tax-map lots with a frontage of 107 feet. The four lots are in a single ownership, and contain a one-

family dwelling, its southerly side being very close to plaintiffs' northerly line.

Some time after Mr. and Mrs. Pou acquired their property in 1932, it was placed in the A-2 residential zone by the Borough zoning ordinance. The record inexplicably does not show when the designation was made, *i. e.* whether in the original zoning ordinance, which apparently was adopted after 1932, or whether the allocation to the A-2 zone occurred in 1955 when the ordinance was revised. Whatever may be the chronology, it is undisputed that, when acquired, the Pou lot was not in the A-2 zone with its frontage or side-yard requirements. Moreover, there is no proof in the record to show the existence of either a zoning ordinance in 1932, or any front-foot or side-yard requirement for building lots at that time.

The A-2 zone is restricted to one-family dwellings. To qualify for building purposes, lots in the zone must have a minimum frontage of 80 feet, a minimum area of 8000 square feet, and the construction must have side yards totaling 18 feet, no one of which can be less than eight feet.

On June 11, 1965, Mr. and Mrs. Pou contracted to sell the lot in question to Harrington Glen, Inc. for $5,000. Completion of the transaction was conditioned upon obtaining a variance from the frontage and side-yard requirements of the A-2 zone so that Harrington could build a one-family home thereon. The request for a building permit having been refused by the Borough building inspector, Harrington appealed to the Board of Adjustment for a variance to permit the proposed home to be constructed on the Pou lot with its 40-foot frontage and 4880 square foot area, and, as the plans disclosed, with a seven-foot side yard on each side. The appeal was based upon *N. J. S. A.* 40:55-39(*c*) which authorized the Board of Adjustment to grant a variance.

"Where by reason of exceptional narrowness, shallowness or shape of a specific piece of property, * * * or by reason of other extraordinary and exceptional situation or condition of such piece of property, the strict application of any regulation enacted under the

act would result in peculiar and exceptional practical difficulties to, or exceptional and undue hardship upon the owner of such property * * *."

The Board conducted a hearing to consider the matter.

At the hearing it appeared that the existing homes on Glenwood Avenue in the block in which the Pou lot is located are in the low to mid-$30,000 price range. On the westerly side of Glenwood Avenue within this block the property is in the A-3 one-family residence zone. The front-line requirement for that zone is 50 feet. Two houses have been built on that side of the street, none, however, with less than 80-foot frontage. (Of course, any further construction may be on 50-foot lots.) The same is true of those on the easterly side in the A-2 zone; the one house on that side has the 107 foot frontage. The first intersecting street to the south on Glenwood Avenue is Hillside Avenue. Property on Hillside Avenue to the west of Glenwood Avenue is in the A-3 50-foot frontage zone. A number of the homes on both sides of Hillside Avenue have 50-foot frontages or less. Two lots with homes on them have 25-foot frontages. They are just a short distance west of Glenwood Avenue. To the east of Glenwood Avenue on the south side of Hillside Avenue, the properties are also in the A-3 50-foot frontage zone. The testimony showed that some of these lots with homes on them within the first block to the east of Glenwood Avenue have frontages of 40 feet.

The general locality is made up of one-family residences on various size lots. It does not appear that there are any sizeable estates or large homes in the immediate area. As noted above, the portion of Glenwood Avenue involved here ends at the golf course. No property adjacent to the Pou lot on the north is available for purchase; to the south there is a small lot, approximately 40'x60,' which if it could be acquired would add about 2400 square feet to plaintiffs' property. Even if this additional piece could be purchased, and there is no proof that it is in the market for sale, the

resulting oddly shaped lot would have a total area of 7280 square feet, still under the required 8000 square feet.

The real estate broker who described the section of the Borough involved, the size of the lots and the price range of homes thereon, testified also that he was familiar with the type home to be constructed on the Pou lot, and that he had been told the expected sales price upon completion would be approximately $30,900. No objection was offered to this statement of the price, and when plaintiffs' attorney began to pursue the matter further by offering the plans, the parties as well as the Board indicated the statement would be accepted. In the resolution denying the variance, however, the Board said the evidence "did not satisfactorily indicate that the proposed building would be of the same or similar valuation as those of surrounding property owners." In view of the apparent agreement at the hearing, the conclusion was unfair. Since a remand is being ordered, further and more precise proof of the value of the proposed structure may be offered, unless the parties reach an agreement on the matter.

At the conclusion of the real estate broker's testimony he gave the opinion that the variance would not be a detriment to the neighborhood or the existing zoning plan. He said also that the Pou property was useless unless a one-family house could be built on it. There was no expert proof to the contrary. Some of the neighboring owners voiced objections to the grant of a variance, saying it would adversely affect their property and the character of the area.

The Board denied the variance by a resolution which falls far short of legal sufficiency. It contains no specific factual findings with respect to the criteria set out in N. J. S. A. 40:55-39(c), the basis for testing a property owner's right to such relief. It says only that no satisfactory evidence was introduced showing sufficient hardship to justify grant of a side-yard variance or "a variance to construct a dwelling on the property in question." It concludes by declaring that the variance "could not be granted

without substantial detriment to the public good and without substantially impairing the intent and purpose of the zoning plan and ordinance." Denial of a variance on a summary finding couched in the conclusionary language of the statute is not adequate. There must be a statement of the specific findings of fact on which the Board reached the conclusion that the statutory criteria for a variance were not satisfied. Unless such findings are recited, a reviewing court cannot determine fairly whether the Board acted properly and within the limits of its authority in refusing a variance. *Griffin Const. Corp. v. Board of Adjust. of Tp. of Teaneck*, 85 *N. J. Super.* 472, 475 (*App. Div.* 1964); *Peoples Trust Co. of Bergen County v. Board of Adjust. of Borough of Hasbrouck Heights*, 60 *N. J. Super.* 569 (*App. Div.* 1959); *Tullo v. Millburn Twp.*, 54 *N. J. Super.* 483 (*App. Div.* 1959). Under the circumstances we find it necessary to remand the matter to the Board of Adjustment for a review of the record, a reconsideration of the evidence, and if denial of the variance is reaffirmed, for a full and complete statement of the factual findings on which the denial is based. Such findings should have a clear *N. J. S. A.* 40:55–39(*c*) orientation. They should be made in the light of the affirmative and negative criteria specified both in subsection (c) and in the last paragraph of section 39. Particular consideration must be given to the factor of hardship to be suffered by the property owner. In this connection reference should be made to another matter. As we indicated in *Wilson v. Borough of Mountainside*, 42 *N. J.* 426, 452–453 (1964), when neither the owner of the lot at the time of adoption of the zoning ordinance which made the lot undersized, nor a subsequent owner, did anything to create the condition (*i. e.*, the undersized lot) for which the variance is sought, a right to relief possessed by the original owner passes to the successor in title. Such right is not lost simply because the succeeding owner bought or contracted to buy with knowledge of the lot-size restriction. See 2 *Rathkopf, Law of Zoning & Planning*, c. 48, p. 48–20 (3*d* ed. 1966).

■ There is a stern necessity in a case like this one for thorough evaluation of the facts and crystal clear findings with respect to the statutory requirements for a variance. The Board must have in mind that if it finds plaintiffs are not entitled to relief, the ordinance will have zoned their property into idleness. Denial of permission to build a home upon the lot deprives it of all productive or beneficial use. The only distinction between such zoning restriction and an actual taking by the municipality is that the restriction leaves the owner with the burden of paying taxes on the property, while the outright taking relieves him of that burden. Ordinarily restraint upon all practical use, such as that which would follow from denial of a variance, is spoken of in terms of confiscation. *Morris Cnty. Land, etc. v. Parsippany-Troy Hills Twp.*, 40 *N. J.* 539, 554–557 (1963); *Kozesnik v. Montgomery Twp.*, 24 *N. J.* 154, 182 (1957); *Graves v. Bloomfield Planning Bd.*, 97 *N. J. Super.* 306, 315 (*Law Div.* 1967); *Mischiara v. Board of Adjust. of Piscataway Twp.*, 77 *N. J. Super.* 288, 292 (*Law Div.* 1962); *Kryscnski v. Shenkin*, 53 *N. J. Super.* 590, 597 (*App. Div.*), certification denied, 29 *N. J.* 465 (1959); *Burke v. Borough of Spring Lake Bd. of Adjust.*, 52 *N. J. Super.* 498, 503 (*App. Div.* 1958); *Robyns v. City of Dearborn*, 341 *Mich.* 495, 67 *N. W. 2d* 718 (1954); *Ritenour v. Dearborn Twp.*, 326 *Mich.* 242, 40 *N. W. 2d* 137 (1949); *Arverne Bay Const. Co. v. Thatcher*, 278 *N. Y.* 222, 15 *N. E. 2d* 587, 592, 117 *A. L. R.* 1110 (1938); *Bexson v. Board of Zoning & Appeals, Town of Hempstead*, 28 *A. D. 2d* 848, 281 *N. Y. S. 2d* 569 (1967); *Saravo Bros. Const. Co. v. Zoning Bd. of Review, Town of Johnston, R. I.*, 231 *A. 2d* 9 (1967); *Kent Cnty. Land Co. v. Zoning Bd. of Review, City of Warwick, R.I.*, 216 *A. 2d* 511 (1966); *Denton v. Zoning Bd. of Review, City of Warwick*, 86 *R. I.* 219, 133 *A. 2d* 718 (1957); *Annotation*, 117 *A. L. R.* 1117, 1129 (1938).

■ In such cases, therefore, consideration of the utmost fairness must be given to an application for a variance. If upon such consideration the board of adjustment reasonably

concludes that a variance can be granted without substantial detriment to the public good and without substantially impairing the intent and purpose of the zone plan and zoning ordinance, the relief sought naturally should be given. But if the conclusion is reached that even though the hardship is clear, the negative criteria of the statute, *N. J. S. A.* 40:55-39, cannot be satisfied because of the size of the lot, the existence of land adjoining the applicant's property which is available for purchase at a fair market price may provide the solution. The purchase of sufficient additional land may bring the lot into conformity with the ordinance requirement, and thus eliminate the need for a variance, or the additional land may bring the lot into such improved status as to warrant the conclusion that the criteria set out in the statute have been met. In the latter event, the Board may grant the variance conditioned upon the acquisition of the additional land. See *Holman v. Board of Adjust., Borough of Norwood,* 78 *N. J. Super.* 74, 80 (*App. Div.* 1963); *Smith v. Paquin,* 77 *N. J. Super.* 138, 145–146 (*App. Div.* 1962); *Burke v. Borough of Spring Lake Bd. of Adjust., supra,* 52 *N. J. Super.,* at *pp.* 503–504. There are cases to the contrary in other jurisdictions. They hold that it would be unjust and beyond the power of the board in such a situation to impose that condition. Additionally, they say that the condition would create many collateral problems which have no rightful place in the decision-making process of the zoning board. *Ritenour v. Dearborn Twp., supra,* 40 *N. W. 2d,* at *p.* 141; *Branard Homes, Inc. v. Plonski,* 20 *Misc. 2d* 443, 189 *N. Y. S. 2d* 536 (*Sup. Ct. Spec. Term* 1959); *Macchia v. Board of Appeals of Incorporated Village of Kings Point,* 7 *Misc. 2d* 763, 164 *N. Y. S. 2d* 463, 465 (*Sup. Ct. Spec. Term* 1957). As has been indicated above, there is a small lot adjoining the Pou property on the south which, if acquired, would bring the frontage into conformity, but leave the combined area somewhat short of the 8000 square feet requirement. Whether that lot is available at a fair price, whether the board would grant the variance subject to its

acquisition, and whether plaintiffs would make the purchase if assured of the variance, were questions not explored at the hearing. It can be done on the remand.

There was some indication at the original hearing that a neighbor on Hillside Avenue, the rear of whose premises adjoins the Pou lot, may be interested in adding the Pou land to his holding. The matter was not pursued. If that neighbor or any other interested person is willing at the time of the renewed hearing to buy Pou's lot at a fair price — for example, at the front-foot value of conforming lots in the general residential area — that fact may be considered on the issue of hardship. To the extent that *Kryscnski v. Shenkin, supra,* 53 *N. J. Super.* 590, is to the contrary, it is overruled. We emphasize again, however, that if the plaintiffs are fairly entitled to a variance as a hardship case under *N. J. S. A.* 40:55–39(c), such relief should not be denied because other property owners are willing to sell additional land to them in order to avoid construction of the proposed home on the undersized lot.

The preceding buy-or-sell discussion has raised this question: If there is no adjoining property available for purchase or available at a fair price, or if the undersized-lot owner does not have sufficient funds to buy additional land or feels that his building project does not warrant further expenditure, and a variance is denied, is there no remedy open to him? His property having been zoned into sterility, must he accept that state and continue to pay taxes thereon *ad infinitum?* The questions project important issues which our remand makes unnecessary to decide now. Accordingly they are reserved.

In passing it might be noted that in situations like the present one, other jurisdictions have declared the ordinance unconstitutional, or have said that it resulted in an unconstitutional taking of property, or that it was invalid as to the particular property. In some such cases involving an appeal from the denial of a variance, it was held that the denial constituted an abuse of discretion. Reversal was accompanied

by statements that the restriction brought about complete sterilization of the property, that it was confiscatory and unconstitutional and that as applied to plaintiff's property it did "not bear that relation to public health, safety and general welfare requisite to its validity." See *Robyns v. City of Dearborn, supra; Ritenour v. Dearborn Twp., supra; Arverne Bay Const. Co. v. Thatcher, supra; Bexson v. Board of Zoning & Appeals, Town of Hempstead, supra; Saravo Bros. Const. Co. v. Zoning Bd. of Review, Town of Johnston, supra; Kent Cnty. Land Co. v. Zoning Bd. of Review, City of Warwick, supra; Denton v. Zoning Bd. of Review, City of Warwick, supra; Branard Homes, Inc. v. Plonski, supra; Long Island Land Research Bureau, Inc. v. Young,* 7 *Misc.* 2d 469, 159 *N. Y. S.* 2d 414 (*Sup. Ct., Spec. Term* 1957); *Miller v. City of Beaver Falls,* 368 *Pa.* 189, 82 *A.* 2d 34 (1951).

All of the cited cases recognized, as do our own, the long-since settled doctrine that reasonable zoning regulations designed to promote the orderly physical development of a municipality according to a land use pattern represent a valid exercise of police power. Of course, such regulations, by establishing districts wherein land may be devoted only to certain specified uses, impose restrictions on the ordinary incidents of ownership. But the restrictions are not offensive constitutionally because when reasonable in degree and, in the judgment of the governing body, necessary to the physically harmonious growth of land use in the municipality, they serve the overall public interest of the community. *Kozesnik v. Montgomery Twp., supra; Duffcon Concrete Products, Inc. v. Borough of Cresskill,* 1 *N. J.* 509 (1949); *Clary v. Borough of Eatontown,* 41 *N. J. Super.* 47 (*App. Div.* 1956); *Newark Milk & Cream Co. of Newark v. Parsippany-Troy Hills Twp.,* 47 *N. J. Super.* 306 (*Law Div.* 1957). But they say that a municipality cannot constitutionally restrict the use of an owner's land in such manner as to deprive him of all practical use of it. They hold that deprivation of that nature is confiscation, and if the

governing body deems such restriction necessary to serve the public interest or the general welfare an obligation to compensate the owner for the loss suffered must be accepted. It would be unjust, they say, to compel the owner to assume the cost of such a benefit conferred by the governing body on all the members of the community. See *Dunham, Legal and Economic Basis for City Planning,* 58 *Colum. L. Rev.* 650, 655 (1958). As the Supreme Court of Illinois said in *Tews v. Woolhiser,* 352 *Ill.* 212, 185 *N. E.* 827, 831 (1933):

> "If it be of public benefit that property remain open and unused, then certainly the public, and not private individuals, should bear the cost of reasonable compensation for such property under the rules of law governing the condemnation of private property for public use."

There is nothing in the out-of-state cases which denies recognition to the principle that in its ordinary operations, government would be seriously hampered if to some extent certain values incident to property could not be diminished without payment. Obviously some values are enjoyed under implied limitation and must yield to the police power. But the extent of a particular diminution must be considered in determining its propriety. And the cited cases suggest that when diminution reaches a certain degree, certainly when it unreasonably renders the property useless for practical purposes, as by zoning restrictions, an exercise of eminent domain is called for and compensation must be paid. See *Pennsylvania Coal Co. v. Mahon,* 260 *U. S.* 393, 413, 43 *S. Ct.* 158, 67 *L. Ed.* 322, 325 (1922).

In this connection, the Supreme Court of New York, in *Long Island Land Research Bureau, Inc. v. Young, supra,* 159 *N. Y. S. 2d,* at *pp.* 416–417 spoke emphatically on the subject:

> "When a municipal legislative body divides a town or village into districts and prescribes the minimum land dimensions for particular uses in such districts, it does so with at least constructive notice of the existence therein of every sub-standard parcel held in single,

separate ownership. It is under an absolute duty to make adequate provisions for such parcels. While it can limit their use, it cannot render them useless. True, a line always exists beyond which the erection of a dwelling, or place of business, or any other use of a sub-standard lot may have become detrimental to the general welfare, but in such cases the municipality is bound to compensate the owner if it proposes, in the public interest, to bar his property from any *practical* use for which it might be suited. It cannot compel him to sell to an adjoining owner nor can it require him to purchase additional contiguous property, if such is available. Rather, it must itself acquire the property by purchase or condemnation since, in effect, it is taking it for a public purpose."

The issues of confiscation arising from restrictive zoning of the type presented by this record have been referred to simply to bring them to the fore, and then reserve them until their determination is essential to the disposition of a case. Obviously, important zoning and perhaps fiscal problems are involved which should not be considered and decided except in a proper context.

For the reasons stated the judgment of the Appellate Division is reversed. The cause is remanded to the Board of Adjustment for reconsideration of the variance application. Upon reaching a decision to grant or to deny the relief sought, the ruling shall be accompanied by specific findings of fact with respect to the statutory criteria prescribed by *N. J. S. A.* 40:55-39 (*c*). If the variance is denied, plaintiffs may seek a further review thereof in this Court.

*For reversal*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—None.