JOHN H. GOUGEON, PLAINTIFF-RESPONDENT, v. BOARD OF ADJUSTMENT OF THE BOROUGH OF STONE HARBOR, BOROUGH COUNCIL OF THE BOROUGH OF STONE HARBOR, DEFENDANTS-RESPONDENTS, AND JOSEPH F. GREENE AND MARGARET E. GREENE, HIS WIFE, AND DILLWYN T. WATTIS AND BERNICE WATTIS, HIS WIFE, INTERVENORS-APPELLANTS.

Argued May 20, 1968—Decided June 28, 1968.

*Mr. Joseph F. Greene, Jr.* argued the cause for intervenors-appellants (*Messrs. Curry, Purnell & Greene,* attorneys).

*Mr. Joseph P. Greco* argued the cause for plaintiff-respondent.

*Mr. John W. Gilbert* argued the cause for defendants-respondents.

The opinion of the court was delivered by

FRANCIS, J.   The issue here is whether plaintiff Gougeon is entitled to a variance or a special exception from the lot-area requirement and the side yard restrictions of the zoning ordinance of the Borough of Stone Harbor. The relief sought was opposed particularly by the intervenors Joseph F. and Margaret E. Greene, husband and wife, and Dillwyn T. and Bernice Wattis, also husband and wife. The Greenes own the property adjoining plaintiff's lot on the east. At the out-

set of the proceedings the Wattises owned the property adjoining plaintiff's lot on the west. The Wattises' property, an undeveloped lot, has since been sold and Mr. and Mrs. Wattis are no longer in the case. Denial of the application by the Board of Adjustment was reversed by the Law Division of the Superior Court, and the reversal was affirmed by the Appellate Division in an unreported opinion. We granted certification. 51 *N. J.* 184 (1968).

Plaintiff is the owner of an undeveloped 30′ x 110′ lot known as 415 Berkley Road, Stone Harbor. It is bounded by Berkley Road on the north and by the Stone Harbor Basin on the south. The record indicates that in 1921, when a private company was developing the Borough, lots of 30 feet frontage were the type commonly sold in this area. The lot was acquired in 1936 by Gougeon's father. In 1946 the father conveyed it to plaintiff and his two brothers. By deed dated April 2, 1958 the two brothers transferred their interest to plaintiff.

In December 1947 the Borough enacted a zoning ordinance. It placed the lot in question in the Residential A District. The requirements of the district are that no building "shall be erected on a lot of less than 5,000 square feet." No frontage requirement was included. Thus a lot 30′ x 167′ would be a conforming lot. It was provided also that not more than 25% of the lot area could be occupied by a building; further, a 10-foot front yard, a minimum 25-foot rear yard and side yards each of a minimum width of 10 feet were required. No building, except a garage or accessory structure, was authorized which would be less in area than 900 square feet, measured at ground level.

The anomalous character of this portion of the ordinance is apparent at once. A 30′ x 170′ plot would contain 5,100 square feet and so would be an authorized building lot. Yet if 10-foot side yards are required, the building would not exceed 10 feet in width. In order to meet the area requirement of 900 square feet, the building would have to be 10′ x 90′—an impossible prospect. On its face the practical effect

of the section is to render 30' lots inutile for residence purposes.

Obviously, when adopting the zoning ordinance the governing body recognized that there were many 30' lots in the Borough, some with homes already built upon them and some undeveloped. The record is not clear as to the number of such lots in plaintiff's area on which homes have been constructed. The statements vary: 17 or 18 out of 60 lots in the area; 21 out of 60; 30 out of 60; about 30 homes on such lots within 300 yards or one-quarter of a mile of plaintiff's lot; six out of 12 homes within 200 feet of plaintiff's property are on 30' x 110' lots. The matter should not have been left in so ambiguous a state. Precise proof is readily accessible. In fact there is no reason why the parties could not have agreed upon the facts.

In order to provide an avenue of relief for the undeveloped 30 foot lots, an exception was authorized in section 9(c) of the ordinance. It appears to be an amendment, but no one mentions it as such, nor does the date of adoption appear. It says:

"Where a lot containing less square footage than required for the district in which it is located, was purchased prior to the effective date of this ordinance, to which this ordinance is an amendment, the then and now owner thereof may erect upon such lot a building with side yards of lesser width than required for the aforementioned district but in no case less than 5 feet for each side yard and 6 feet from the front property line, subject to the approval of the Board of Adjustment as hereinafter created."

The evidence reveals that two exceptions or variances have been granted under this section since its adoption. They were granted to owners of undersized lots.

Early in 1965 plaintiff decided to build a home on his 30' x 110' plot. According to the plans submitted to the Borough, it is to be a year-round insulated house, as contrasted with most of the houses in the area which are summer residences. Gougeon and his wife intend to live there permanently upon his retirement. His building is to be a two-story frame

structure with a concrete and masonry foundation. It will contain three bedrooms, two bathrooms and a powder room, a living room, den, kitchen and utility room. Dimensions of the building are 20' x 38', an area of 760 square feet or 23% of the 3,300 square foot lot. A permit to build was denied by the Building Inspector because the lot was undersized and the 10-foot side yard requirements of the ordinance could not be met.

Plaintiff thereupon applied to the Board of Adjustment for a variance. There is much controversy in the record as to whether the application was for a special exception under section 9(c) of the ordinance (see *N. J. S. A.* 40:55–39(b)), or a variance as authorized by *N. J. S. A.* 40:55–39(c) of the zoning act, or under both. The controversy produced a limited approach to the problem by the parties and the Board, and resulted in an improper curtailment of evidence on the rehearing before the Board. In our judgment the application should have been treated as if made both under section 9(c) of the ordinance and *N. J. S. A.* 40:55–39(c).

As quoted above, under section 9(c) of the ordinance, when an undersized lot is involved, the Board in its discretion may grant permission to the owner to erect a home thereon with minimum side yards of five feet and front set back of six feet. Preliminarily, it should be noted that Gougeon qualifies as an applicant under the section either as a purchaser within its connotation or as an owner who succeeded to the rights of such a purchaser. *Harrington Glen, Inc. v. Board of Adjust., Leonia,* 52 *N. J.* 22 (1968); *Wilson v. Borough of Mountainside,* 42 *N. J.* 426, 452 (1964); *Griffin Const. Corp. v. Board of Adjust., Teaneck,* 85 *N. J. Super.* 472, 476–477 (*App. Div.* 1964), certif. denied, 44 *N. J.* 408 (1965); *Graves v. Bloomfield Planning Bd.,* 97 *N. J. Super.* 306, 315 (*Law Div.* 1967). See also *Stabel v. Gertel,* 111 *N. J. L.* 296 (*E. & A.* 1933). But the discretion of the Board to grant an exception is not an unbridled one. Its exercise is confined by the negative criteria set forth in *N. J. S. A.* 40:55–39:

"No relief may be granted or action taken under the terms of this section unless such relief can be granted without substantial detriment to the public good and will not substantially impair the intent and purpose of the zone plan and zoning ordinance."

*Verona, Inc. v. Mayor & Council of West Caldwell,* 49 *N. J.* 274, 283 (1967); *Wilson v. Borough of Mountainside, supra,* 42 *N. J.,* at *p.* 447; *Reinauer Realty Corp. v. Borough of Paramus,* 34 *N. J.* 406, 411 (1961); *Tullo v. Millburn Twp.,* 54 *N. J. Super.* 483 (*App. Div.* 1959). The variance contemplated by *N. J. S. A.* 40:55–39(*c*), also subject to the cited negative criteria, may be granted

"Where by reason of exceptional narrowness, shallowness or shape of a specific piece of property, or by reason of exceptional topographic conditions, or by reason of other extraordinary and exceptional situation or condition of such piece of property, the strict application of any regulation enacted under the act would result in peculiar and exceptional practical difficulties to, or exceptional and undue hardship upon the owner of such property * * *."

In rejecting the application for a variance or special exception to build on plaintiff's 3,300 square foot lot, the Board gave as reasons.

"1. Aesthetic beauty and intent of the Zoning Ordinance would be impaired.
2. The neighboring building owned by Mr. Greene would be only 9.14 feet from proposed building.
3. Fire and safety hazard.
4. Construction on this lot would definitely be detrimental, since the Ordinance was adopted to prevent overcrowding."

These statements, except for (2), are conclusionary in character and inadequate. Moreover, they are not sufficiently related to the negative criteria quoted above to furnish a true indication that such criteria were given consideration. Supporting and explanatory facts and factual findings for the conclusions must be set forth. Unless such facts and findings are recited, a reviewing court cannot determine fairly whether the Board acted properly and within the limits of its au-

thority. *Harrington Glen, Inc. v. Board of Adjust., Leonia, supra.* On the remand to be ordered, whatever its result, we assume that the facts supporting the conclusions will be fully and completely stated.

At the first hearing before the Board no stenographic record was made. The appendix contains a sketchy outline of the proceedings and the short letter of the Board to Gougeon denying his application. The reasons given were that the lot has an area less than 5,000 square feet, and the proposed side yards are less than 10 feet. On appeal to the Law Division a remand was ordered for the taking of testimony and the making of proper findings of fact by the Board. On that remand testimony was taken stenographically, after which the Board again denied the relief sought. Some reference to facts adduced and facts not developed is necessary to our review.

The square foot area and side yard requirements of the ordinance, together with the use restriction to one-family residences, have zoned plaintiff's property into idleness. As the real estate broker produced by plaintiff said, if the lot is not "buildable" it has only minimal value. Further, plaintiff testified his lot is irreplacable. No other lot is available on the bay. If there were, he would be interested in buying it. Thus the hardship seems plain. Therefore, if sufficient evidence is presented at the new hearing to satisfy the negative criteria specified in the statute, in the absence of some unusual circumstance the right to a special exception or a variance would appear to exist.

Plaintiff's building plans meet the five-foot side yard minimum requirement for the special exception. They also meet the front and rear line set back demands. The proposed dwelling would occupy 23% of the lot, thus satisfying the maximum permitted ground coverage of 25%. The intervenors, Joseph F. and Margaret E. Greene, point out that the ground area of the house is only 760 square feet whereas the ordinance calls for not less than 900 square feet. That deficiency was not discussed by the Board of Adjustment nor

was it specified as a reason for denying the variance or exception. Permission to build could have been given in spite of the house area deficiency, either under section 9(c) of the ordinance, or under *N. J. S. A.* 40:55–39(c). It is observed also that section 4(b)7 of the ordinance authorizes the Board of Adjustment to "change the minimum size of buildings and other requirements when the building lots along the bay or inland waterways require same, except that all such exceptions shall be uniform in the particular area to which applied as far as practicable."

We assume from the absence of any suggestion to the contrary that the Board did not consider the 760 square foot area of plaintiff's proposed structure unacceptable. At the oral argument before us plaintiff indicated he would increase the size of his dwelling to meet the 900 square foot requirement if the Board wished to condition permission to build upon such a requirement. The addition of the 140 square feet of structure, however, would increase the ground area coverage to 27% of the lot, or 2% above the maximum set out in the ordinance. The problem raised by the excess of 2% above the maximum specified, as against a dwelling occupying 2% less than the maximum lot coverage but 140 square feet short of the 900 square feet, in the ultimate is for the Board's further consideration.

The record indicates that the parties and the Board were unaware that the Board's obligation was to consider the negative criteria of *N. J. S. A.* 40:55–39, whether an exception was sought under section 9(c) of the ordinance or a variance under section 39(c) of the statute. The result was inadequate development of facts upon which a fair and meaningful judgment could be formed. It may be that the members of the Board had personal knowledge of physical conditions relating to developed and undeveloped property on what the parties call the "peninsula." But such knowledge cannot be relied upon as a basis for rejecting or granting a variance, unless the facts are placed in the record. There was considerable controversy about limiting the proof to con-

ditions within a radius of 300 feet or 500 feet of plaintiff's property. The significance of the reference in the record to the "peninsula" in this connection is not apparent. Whatever these distances may mean to the informed, it is important in the present situation that consideration be given to conditions existing over the widest possible residential area which may reasonably bear on plaintiff's right to a variance or exception. If the "peninsula" contains the 60 lots referred to in the testimony, including that of the plaintiff, the parties should be allowed to show their size, the number that are 30' x 110', or under 5,000 square feet in area, the number of undersized lots that are built upon, including the number containing houses under 900 square feet in ground area. The side yard distances between existing houses throughout the area should be shown. There is no reason why all of these physical facts should not be agreed upon by the parties at the rehearing.

The Board assigned as one reason for denying relief to the plaintiff that the easterly side of his home will be only 9.14 feet from the westerly side of the Greene home. In this connection, on the remand it should not be overlooked that plaintiff's house would be five feet from his lot sideline, as contemplated by section 9(c) of the ordinance, and that the Greene dwelling, although constructed prior to the zoning ordinance, was placed within 4.14 feet of their sideline. Moreover, an effort was made to show that plaintiff's father owned a lot with a house on it on the northerly side of Berkley Road directly across from the lot in question here, and that either the father or the plaintiff sold that parcel sometime after adoption of the zoning ordinance and before this application for a variance was made. The two lots are not contiguous. We regard the sale as having no relevance to the issue before the Board. *Bierce v. Gross,* 47 *N. J. Super.* 148, 159–160 (*App. Div.* 1957) is not comparable. In that case the undersized lot for which the variance was sought was created by the applicant by dividing a parcel of land, which he had purchased with knowledge of the area requirement of

the zoning ordinance, into two lots, one conforming and the other inadequate to meet the area requirements. The Appellate Division held that the proof failed to establish the type of undue hardship contemplated by *N. J. S. A.* 40:55-39 (*c*).

■ When the evidence outlined above has been introduced at the rehearing, as well as any other relevant material which the parties may offer, the Board should reconsider the matter in light of the entire record. The precise question whether the exception or variance can be granted without substantial detriment to the public good and without substantially impairing the intent and purpose of the zone plan and zoning ordinance should be dealt with. Whatever the Board's conclusion on those subjects, the specific factual findings and reasons on which it is based should be stated.

■■ If the conclusion is reached that the negative criteria have been satisfied, the remaining question is whether exceptional and undue hardship will be visited on plaintiff if an exception or variance is denied. The hardship issue must be dealt with on a variance application under *N. J. S. A.* 40:55-39 (*c*). Likewise it is an issue appropriate for consideration on a special exception application under section 9 (*c*) of the ordinance. Obviously presence or absence of hardship in the latter case is a matter which the Board may weigh in exercising its discretion to grant or refuse the exception. As we have said above, the Borough ordinance has zoned plaintiff's lot into idleness for home building purposes. The hardship is beyond question. But is it "exceptional or undue hardship"? Subject to a further qualification to be mentioned, we believe it is, and if the negative criteria are met it would be sufficient to justify a variance.

The testimony reveals that the Greenes have made plaintiff a firm offer of $7,000 for his lot. If sold to them, the Greenes would then have a 60-foot lot which would be the same size as the one on the west of plaintiff, recently sold by the original intervenors, Mr. and Mrs. Wattis. This, of course, would be in keeping with the professed purpose of the

zoning ordinance to open up the area, particularly the bay front and inland waterways, and to stop further overcrowding of small lots. On the rehearing the record should be made crystal clear with respect to the Greene offer. We assume from the unqualified statements in the briefs that the offer in at least that amount is still open, and that a stipulation or oral testimony will be given specifying the maker and satisfactory terms of payment.

Of course, no offer to purchase should play any part in the consideration of the case unless it represents at least the fair market value of a 30′ x 110′ lot on which a home could be built, *i. e.*, at least the front-foot value of conforming lots in the general residential area. *Harrington Glen, Inc. v. Board of Adjust., Leonia, supra*. In view of the state of the record, the figure should not be lower than the existing offer of $7,000. Gougeon's testimony contains his belief that the Wattises' 60-foot lot sold for $20,000. Assuming that to be true, the $7,000 offer may not be adequate. Therefore the parties may offer further proof of value, after which the Board shall make a determination whether $7,000 or some higher figure represents fair value as above described.

Under the circumstances, if the overall proof at the rehearing satisfies the negative criteria of the statute, the hardship being established, the variance or exception shall be granted, unless a binding offer is made on the record to pay plaintiff the fair market value of his lot, which value cannot be less than $7,000. If the negative criteria are met, but the $7,000 offer is withdrawn or renewed for less than $7,000, the variance or exception shall be granted. To put the matter another way: If the negative criteria are met, plaintiff may in the discretion of the Board be denied the permission to build his house on condition that a binding offer as described above is made and is available for prompt payment to him. If plaintiff refuses such a fair and reasonable offer, the Board may conclude that his case falls short of the exceptional or undue hardship which justifies relief.

■ Reasonable zoning regulations designed to promote the orderly physical development of a municipality according to a land-use pattern represent a valid exercise of police power. Such regulations, by establishing districts where land may be devoted only to certain specified uses, and which fix area and front and side yard requirements in the districts, impose restrictions on the ordinary incidents of ownership. But such restrictions serve the overall community interest and are not offensive constitutionally when reasonable in degree and considered necessary by the governing body to the physically harmonious growth of land use in the municipality. *Harrington Glen, Inc v. Board of Adjust., Leonia, supra.* No one suggests here that the entire ordinance is invalid or that the minimum square foot area requirement for lots in the residence district is arbitrary or unreasonable. The problem is whether the area requirement can be imposed on plaintiff's non-conforming lot and a variance or exception denied in the discretion of the Board of Adjustment because an adjoining property owner has offered to buy his lot at or above its market value as a conforming lot. In such situation an obvious conflict arises between the public interest represented by the zoning restriction and the private property rights of the owner. If in the judgment of the Board of Adjustment the paramount interest to be served is the harmonious physical development of the community, and that interest can be served through full compensation to the landowner, then it might well be reasonable for the Board to find that such undue or exceptional hardship as would warrant a variance or special exception had not been shown.

If, on the other hand, the Board, on a statement of adequate reasons accompanied by specific factual findings, refuses the exception or variance, declaring that the negative criteria have not been met, another situation will present itself. In that event, if the exception or variance is denied, a substantial question will arise as to whether the ordinance as applied to plaintiff is arbitrary and unreasonable and amounts to an unconstitutional restriction on the use of his

property. Compare *Harrington Glen, Inc. v. Board of Adjust., Leonia, supra.* That problem cannot be decided now. If it arises it will have to be presented to us on a record containing the full facts as developed at the rehearing.

For the reasons stated, the matter is remanded to the Board of Adjustment for further hearing and redetermination. We shall retain jurisdiction so that after the redetermination, if an aggrieved party so desires, an application may be made directly to us for a further review of the action taken.

*For remandment*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*Opposed*—None.