**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2239-18T4

MICHAEL J. MONAGHAN,

      Plaintiff-Appellant,

v.

TOWNSHIP OF TEANECK
PLANNING BOARD,

      Defendant-Respondent.

_____

Submitted April 20, 2020 – Decided May 8, 2020

Before Judges Geiger and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-2175-18.

Richard V. Cedzidlo, attorney for appellant.

Dario Albert Metz & Eyerman LLC, attorneys for respondent (Brian S. Edmund Eyerman, on the brief).

PER CURIAM

     Plaintiff Michael Monaghan appeals from a December 18, 2018 Law Division order which vacated a decision by the Township of Teaneck Planning

Board (Board) that denied his application for subdivision approval and the grant of associated bulk variances and remanded the matter to the Board. We concur with the Law Division that further fact-finding is required and accordingly remand the matter to the Board for that purpose.

I.

In November 1999, plaintiff purchased residential property at 79 Canterbury Court in Teaneck. Plaintiff's predecessors in title obtained the property in two separate lots at different times. A residential home existed on one lot and the other lot remained undeveloped. At some point, prior to plaintiff's purchase, the two lots were combined.

Plaintiff filed an application with the Board to re-subdivide his property, referred to in the record as Lot 4, into the two lots as originally conveyed to his predecessors in title. Plaintiff planned to maintain the lot with the residence already built on it (Lot 4.01) and build a new single-family residence on the undeveloped lot (Lot 4.02). The Board considered plaintiff's application and held a hearing on December 14, 2017, at which it heard testimony from plaintiff's engineer and planner.

Plaintiff's engineer, Steven L. Koestner, who qualified without objection as an expert, explained that the back of Lot 4.01 would be 80.27 feet wide, and

across the front, would measure 82.61 feet on a curve. Koestner stated that proposed Lot 4.02 measured "50 feet wide at right angles and 55.79 feet in the front along the curve." He noted that the proposed rear yard of Lot 4.02, which measured 8.31 feet, was not in conformance with Teaneck's zoning requirements, but Lot 4 was already nonconforming in any event.

Koestner also testified regarding the need for a lot width variance and stated that according to the controlling ordinance, if "two[-]thirds of the total building lots" on the same street as the proposed lot "contain lot widths not greater than the subject lot," then the subject lot is in conformance and does not require a variance. He testified that Lot 4.02 would not require a lot width variance because "there are so many lots [on the street] in the width of [fifty] feet." Koestner noted, however, that a bulk variance would be required for both Lots 4.01 and 4.02, as the applicable municipal ordinance requires 7500 square feet of area, but Lot 4.01 would be 6350 square feet and Lot 4.02 would measure 5207 square feet.

Steve Lydon, plaintiff's planner, was also accepted as an expert by the Board and testified that the proposed subdivision would satisfy the positive criteria of the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -129. He showed the Board a map of Canterbury Court and explained that prior to any

3

subdivision, Lot 4 had "130 feet of frontage" and that "[n]one of the other lots on Canterbury Court ha[d] that frontage." Lydon also noted that because plaintiff's house was "dramatically offset" and "not centered" on Lot 4, proposed Lot 4.02 did not "add utility to the dwelling" and would function more effectively as a separate subdivided lot with a separate single-family home.

Lydon contended that if approved, Lot 4.01 would "be characterized by deeper lot dimensions, so it's a more typical single-family home." He stated that "the new lot could be created with . . . one variance," that the remainder of Lots 4.01 and 4.02 would then conform with the town ordinance, and that the proposal does not "create any new variances for [Lot 4.01] for setbacks or for coverages." In addition, he pointed out that Lot 4 was "unique in both its size and its configuration" in comparison with the rest of Canterbury Court, and that the proposed subdivision would make those lots "consistent and compatible with the existing neighborhood of . . . the existing lots."

Noting that the MLUL requires that an applicant for subdivision variances satisfy "negative criteria," Lydon explained there was no detriment "in creating lots similar to those that are already existing in the neighborhood." He also testified that a single extra lot on Canterbury Court would not create a significant increase in traffic. Further, he believed that parking would not be an issue

A-2239-18T4

because there was available on-street parking. In sum, he testified that the proposed subdivision would create "very little increase of population, no increase in stormwater runoff, [and] no measurable increase in traffic."

Objectors also spoke at the meeting. First, a neighbor: 1) objected to the side yard proposal because it constituted "an encroachment on [her] property"; 2) testified that none of the properties on the street "conform to current ordinance[s]" because "[t]hey were all grandfathered . . . [a]nd . . . built before these current ordinances"; and 3) informed the Board that plaintiff "has demonstrated little to no interest in the neighborhood as evidenced by his neglect of property over many years" and provided copies of police reports and code violations issued to plaintiff for "neglect of the property." The remainder of the objectors agreed. According to the transcript of the Board hearing, plaintiff's application was rejected by a vote of nine to one.[1]

The Board memorialized its vote in a resolution dated February 8, 2018. It determined that the proposed subdivision of Lot 4 "cannot be granted without substantially impacting the public good and without substantially impairing the intent and purpose of the Zone Plan, Zone Scheme[,] and Master Plan of the

---

[1] We note that the Board's February 8, 2018 resolution indicates that plaintiff's application was denied by an eight to zero vote.

A-2239-18T4

Township of Teaneck." In support of its decision, it concluded that "[t]he subdivision of the current lot, currently utilized as a single family home[,] would not be in the public's interest and will have detrimental effects to the community."

Further, it stated that plaintiff's proposed subdivision would not meet the applicable zoning standards "including but not limited to lot size and frontage requirements." Moreover, it explained that the subdivision "would inflame an already overcrowded are[a] in which a large number of families with children reside" and "the proposed lot would be significantly undersized as required for a single[-]family home."

On March 27, 2018, plaintiff filed a complaint in lieu of prerogative writ in the Law Division. He alleged that the Board's February 8, 2018 resolution denying the requested subdivision and variance relief was "neither a fair nor reasonable exercise of discretion, given the Board's rejection of sound planning principles as testified to by plaintiff's experts." He further alleged that the Board's decision was "arbitrary, capricious, unreasonable, otherwise wrongful[,] and not supported by the record below" and it "adversely affected plaintiff's financial interest and has resulted in a manifest injustice being worked upon

plaintiff."  Plaintiff sought reversal of the Board's February 8, 2018 resolution and a directive that the Board approve its application.

The Law Division entered an order on December 18, 2018 in which it vacated and remanded the Board's February 8, 2018 resolution after finding that the resolution was arbitrary, capricious, and unreasonable.  In its accompanying written decision, the court concluded that the Board's resolution "clearly did not meet the criteria of N.J.S.A. 40:55D-48," as the Board found, "with no reference to the Township ordinances, that the 'subdivision would inflame an already overcrowded are[a] in which a large number of families with children reside.'" The court further explained that "[t]he Board found the proposed subdivided lot 'will not meet all of the applicable Township [z]oning standards,' without specifying those standards."  Finally, it determined that the Board improperly found that "the project would 'be in conflict with the character of the neighborhoods and/or with the Master Plan of the Township of Teaneck and/or the Teaneck Zoning Code' without referencing specific provisions of the Master Plan or Code."

The court acknowledged that plaintiff's application "require[d] variances, and it is undisputed that a variance pursuant to N.J.S.A. 40:55D-70(c)(2) should not be granted when only the purposes of the owner are advanced; rather, '[t]he

grant of approval must actually benefit the community in that it represents a better zoning alternative for the property.'" (quoting Kaufmann v. Planning Bd. Twp. of Warren, 110 N.J. 551, 563 (1988). On the propriety of a (c)(2) variance, the court also observed that:

> [i]t may be that the applicant cannot meet the criteria, and the Board's decision should be upheld, but the court cannot make the determination based upon the record below or based upon the Board's resolution. The record is devoid of even the zone in which the property is located. Neither brief cites to those provisions of the Master Plan on which the Township relies or cites to the specific language of the Zoning Ordinances which will support either the granting or denial of the variances and subdivision.

This appeal followed.

On appeal, plaintiff argues: 1) the trial court properly concluded that the Board's decision was arbitrary, capricious, and unreasonable; 2) because the Board "did not reject any of the testimony" of plaintiff's experts, and no testimony controverted those experts, its subdivision and attendant variance requests should have been granted; 3) the trial court erred in finding that there may be a basis on remand to deny plaintiff's application for a (c)(1) or (c)(2) variance; and 4) there would be no useful purpose by remanding the matter and that this court should instead direct the Board to grant plaintiff's requested subdivision and variances.

A-2239-18T4

II.

Municipal planning boards are typically granted "wide latitude in the exercise of the delegated discretion" due to their "peculiar knowledge of local conditions." Fallone Prop. v. Bethlehem Planning Bd., 369 N.J. Super. 552, 561 (App. Div. 2004) (quoting Kramer v. Bd. of Adjustment, Sea Girt, 45 N.J. 268, 296 (1965)). When reviewing the decision of a trial court that has reviewed a municipal action, the appellate court is bound by the same standards as the trial court. Id. at 562 (citing Fred McDowell, Inc. v. Bd. of Adjustment of Twp. of Wall, 334 N.J. Super. 201, 212 (App. Div. 2000)).

Setting aside a board's decision requires this court to find that there was a "clear abuse of discretion" on behalf of the board. Cell S. of N.J., Inc. v. Zoning Bd. of Adjustment of W. Windsor Twp., 172 N.J. 75, 82 (2002) (citing Medical Realty Assocs. v. Bd. of Adjustment of Summit, 227 N.J. Super. 226, 233 (App. Div. 1988)). An abuse of discretion can be found if the party attacking the decision can establish that the board's decision was "arbitrary, capricious, or unreasonable." Id. at 81 (quoting Medici v. BPR Co., 107 N.J. 1, 15 (1987)). Absent clear abuse of discretion, a court cannot substitute its judgment for that of the board even when it is doubtful about the wisdom of the action. Id. at 81-82. The reviewing court's findings of fact must be based on evidence presented

before the board and not on the basis of a trial de novo before the court. Antonelli v. Waldwick, 79 N.J. Super. 433, 440-41 (App. Div. 1963).

We give even greater deference to a planning board's decision to deny a variance in preservation of a zoning plan. Nextel of N.Y., Inc. v. Borough of Englewood Cliffs Bd. of Adjustment, 361 N.J. Super. 22, 38 (App. Div. 2003). Where a planning board has denied a variance, the applicant must prove that the evidence before the board was "overwhelmingly in favor of the applicant." Ibid. (quoting Ne. Towers, Inc. v. Zoning Bd. of Adjustment of W. Paterson, 327 N.J. Super. 476, 494 (App. Div. 2000)). The Board's conclusions of law, however, are subject to de novo review. Nuckel v. Little Ferry Planning Bd., 208 N.J. 95, 102 (2011) (citation omitted).

Plaintiff asserts that the trial court properly found that the Board's denial of his application was arbitrary, capricious, and unreasonable, but nevertheless erred by remanding for factual and credibility findings rather than directing the Board to grant plaintiff's requests for a subdivision and attendant variances. Specifically, he argues that because "the [Planning] [B]oard's arbitrary, capricious, and unreasonable action was based solely upon . . . some of the general comments made by Board members that the town is overcrowded and now favors larger lots," we should reverse the trial court's decision to remand

the application and instead "direct[] the Board to grant the subdivision and all variances sought by [plaintiff] at the hearing below."

Plaintiff further argues that the trial court should have directed the Board to grant his application because plaintiff submitted uncontroverted expert testimony which "[t]he Board simply chose to ignore . . . ." In this regard, plaintiff asserts that he "provided more than adequate testimony mandating the granting of the required variances" and the Board "performed absolutely no analysis of this testimony." Specifically, he claims that Lydon's testimony established that under N.J.S.A. 40:55D-70(c)(1), he was entitled to bulk variances because the subdivision would "create two lots that are harmonious in size with the neighboring properties" and "[t]he proposed lot sizes are also very consistent and compatible with the existing surrounding lots." Further, he avers that the variances were mandatory under N.J.S.A. 40:55D-70(c)(2) because the proposed lot creates no "substantial detriment to the public good," nor does it "substantially impair[] the intent and purpose of the zone plan and the zoning ordinance," as supported by plaintiff's experts.

As noted, a "planning board shall, if the proposed subdivision complies with the ordinance and this act, grant preliminary approval to the subdivision." N.J.S.A. 40:55D-48(b). Where the proposed subdivision is not in compliance,

planning boards also have the power to grant variances under N.J.S.A. 40:55D-70(c), commonly called "(c)" variances. N.J.S.A. 40:55D-70(c) states, in relevant part, that a board has the power to grant variances:

> (1) [w]here: (a) by reason of exceptional narrowness, shallowness or shape of a specific piece of property, . . . the strict application of any regulation pursuant to . . . this act would result in peculiar and exceptional practical difficulties to, or exceptional and undue hardship upon, the developer of such property . . . [or] (2) where in an application or appeal relating to a specific piece of property the purposes of this act . . . would be advanced by a deviation from the zoning ordinance requirements and the benefits of the deviation would substantially outweigh any detriment.

Under subsection (c)(1), an applicant must show that exceptional or undue hardship will result if the variance is not granted. Chirichello v. Zoning Bd. of Adjustment, 78 N.J. 544, 552 (1979). What is essential is that the unique condition of the property must be the cause of the hardship claimed by the applicant. Lang v. Zoning Bd. of Adjustment, 160 N.J. 41, 56 (1999).

The hardship criteria of a (c)(1) variance is unaffected by personal hardship, financial or otherwise. Ten Stary Dom P'ship. v. Mauro, 216 N.J. 16, 29 (2013). The focus is "whether the strict enforcement of the ordinance would cause undue hardship because of the unique or exceptional conditions of the specific property." Lang, 160 N.J. at 53. The hardship standard does not require

the applicant to prove that without the variance the property would be zoned into inutility. Id. at 54. The applicant need only demonstrate that the property's unique characteristics inhibit the extent to which the property can be used. Id. at 55.

With respect to (c)(2) applications, our Supreme Court has stated:

> By definition, . . . no (c)(2) variance should be granted when merely the purposes of the owner will be advanced. The grant of approval must actually benefit the community in that it represents a better zoning alternative for the property. The focus of a (c)(2) case, then, will be not on the characteristics of the land that, in light of current zoning requirements, create a "hardship" on the owner warranting a relaxation of standards, but on the characteristics of the land that present an opportunity for improved zoning and planning that will benefit the community.
>
> [Kaufmann, 110 N.J. 551, 563 (1988).]

A (c)(2) variance, then, is not based upon the "hardship" but "requires a balancing of the benefits and detriments from the grant of the variance." Bressman v. Gash, 131 N.J. 517, 523 (1993) (citing Kaufmann, 110 N.J. at 558-60). The analysis focuses on advancing the purposes of the MLUL and the benefits to the community.

In Kaufmann, the Court ruled that there is sufficient public benefit to warrant a (c)(2) variance when it "effectuate[s] the goals of the community as

expressed through its zoning and planning ordinances." 110 N.J. at 564. The Court stated that "[a] (c)(2) variance stands if, after adequate proofs are presented, the board without arbitrariness concludes that the harms, if any, are substantially outweighed by the benefits." Id. at 565.

In sum, the application for a variance under (c)(2) requires:

> (1) [that it] relates to a specific piece of property; (2) that the purposes of the [MLUL] would be advanced by a deviation from the zoning ordinance requirement; (3) that the variance can be granted without substantial detriment to the public good; [and] (4) that the benefits of the deviation would substantially outweigh any detriment . . . ."
>
> [William M. Cox & Stuart R. Koenig, New Jersey Zoning and Land Use Administration, § 29-3.3 at 633 (2020) (citations omitted).]

The statute further provides that a (c) variance under either subsection cannot be granted unless the applicant establishes what is colloquially referred to as the negative criteria, proving that "that such variance or other relief can be granted without substantial detriment to the public good and will not substantially impair the intent and the purpose of the zone plan and zoning ordinance." N.J.S.A. 40:55D-70; see also Lang, 160 N.J. at 57 ("Whether a . . . variance is sought under subsection (c)(1) or (c)(2), the applicant must also satisfy the familiar negative criteria . . . .")

The "negative criteria" are not satisfied where "merely the purposes of the owner will be advanced." Kaufmann, 110 N.J. at 563. Rather, the community must receive a benefit due to the fact that the variance represents a better zoning alternative for the property. Ibid. Thus, the focus of the "negative criteria" is on the characteristics of the land that present an opportunity for improved zoning and planning for the benefit of the community. Ibid. The "negative criteria" also focuses on the impact that the variance will have on the specific adjacent properties affected by the deviations from the ordinance, Lang, 160 N.J. at 57, as well as any detriment to the zoning plan, Kaufmann, 110 N.J. at 565.

Here, the Board apparently found that plaintiff's proofs were inadequate as to both the negative and positive criteria. The finding was made notwithstanding the plaintiff's expert testimony which established: 1) plaintiff required variances as the lot area for both Lot 4.01 and Lot 4.02 would be nonconforming, as well as the "rear yard setback for the garage" and the height of the dwelling; 2) Lot 4.02 would not require a lot width variance because "two[-]thirds of the total building lots" on the street "contain[] lot widths not greater than [fifty] feet," the width of that lot; 3) Lot 4 was both "unique in its size and its configuration" in comparison with the rest of the street, and the proposed subdivision would make those lots "consistent and compatible with the

15

existing neighborhood of . . . the existing lots; 4) no negative criteria applied because there was no detriment "in creating lots similar to those that are already existing in the neighborhood"; 5) there would be no significant difference in traffic, parking, stormwater runoff, or increase in population in the area.

Normally, we would not disturb a board's rejection of expert testimony. While expert testimony is often presented, the board is not bound to accept the testimony. See El Shaer v. Planning Bd. of Lawrence, 249 N.J. Super. 323, 330 (App. Div. 1991). However, here, the reasons for the Board's rejection of the expert testimony, or for its factual findings and legal conclusions, were not articulated in its February 8, 2018 resolution. Given the absence of reasons supporting the Board's rejection, the Law Division properly declined to defer to its findings and remanded to the Board for additional findings. In this regard, N.J.S.A. 40:55D-10(g) "requires a municipal agency to reduce each decision on any application to writing in the form of a resolution that includes findings of fact and conclusions of law." N.Y. SMSA, LP v. Bd. of Adjustment, 370 N.J. Super. 319, 332 (App. Div. 2004). To that end,

> [t]he factual findings set forth in a resolution cannot consist of a mere recital of testimony or conclusory statements couched in statutory language. Rather, the resolution must contain sufficient findings, based on the proofs submitted, to satisfy a reviewing court that the board has analyzed the applicant's variance request

16

> in accordance with the statute and in light of the municipality's master plan and zoning ordinances. Without such findings of fact and conclusions of law, the reviewing court has no way of knowing the basis for the board's decision.
>
> [Id. at 332-33 (citations omitted).]

Thus, resolutions that state their conclusions in a "summary fashion" have "repeatedly been recognized as deficient by the courts." Id. at 333.

"Denial of a variance on a summary finding couched in the conclusionary language of the statute is not adequate." Harrington Glen, Inc. v. Municipal Bd. of Adjustment of Borough of Leonia, 52 N.J. 22, 28 (1968). "There must be a statement of the specific findings of fact on which the Board reached the conclusion that the statutory criteria for a variance were not satisfied." Ibid. "Moreover, the board must explain how its findings support its ultimate legal conclusions." Morris County Fair Housing Council v. Boonton Twp., 228 N.J. Super. 635, 647 (Law Div. 1988). A board has the same obligation to make specific findings of fact and conclusions of law when it grants a variance. See Medici, 107 N.J. at 23. Where the record contains inadequate administrative findings, justice is best served by remanding the case to the reviewing board for reconsideration and specific findings, wherein it may require further proofs and

obtain additional information regarding the disputed facts. See Smith v. Fair Haven Zoning Bd. of Adj., 335 N.J. Super. 111, 123 (App. Div. 2000).

Further, "statements of individual Planning Board members 'represent informal verbalizations of the speaker's transitory thoughts, they cannot be equated to deliberative findings of fact. It is the [r]esolution, and not board members' deliberations, that provides the statutorily required findings of fact and conclusions.'" Rocky Hill Citizens for Responsible Growth v. Planning Bd. of Borough of Rocky Hill, 406 N.J. Super. 384, 413 (App. Div. 2009) (quoting N.Y. SMSA, 370 N.J. Super. at 334).

Here, the Board's resolution contains the following factual findings:

> 1. [Plaintiff] is the owner of the subject premises and is authorized to make this application.
>
> 2. The Board acquired jurisdiction for this hearing upon the filing of the application.
>
> 3. [Plaintiff] submitted plans and other information and presented the sworn testimony of [plaintiff] through its witnesses and its expert witnesses.
>
> 4. That a [p]ublic [h]earing was conducted on December 14, 2017 where testimony was heard under oath, the submittals were examined, the witnesses were questioned by the Board and anyone that wished to question the exhibits or the witnesses were able to do so and those wanting to came forward and questioned the witnesses and the attorney for the applicant.

5. The Board voted not to grant the relief sought by [plaintiff] for site plan approval and subdivision.

Further, it provided the following reasoning for denying plaintiff's application:

1. The subdivision of the current lot, currently utilized as a single[-]family home[,] would not be in the public's interest and will have detrimental effects to the community.

2. There are no negative criteria associated with the project as follows:  a) [plaintiff's] proposed subdivided lot will not meet all of the applicable Township Zoning standards for the construction of a single[-]family home including but not limited to lot size and frontage requirements; b) [t]he subdivision would inflame an already overcrowded are[a] in which a large number of families with children reside; c) [t]he project would be in conflict with the character of the neighborhood and/or with the Master Plan of the Township of Teaneck and/or the Teaneck Zoning code as a whole as the proposed lot would be significantly undersized as required for a single[-]family home; d) [t]here was credible opposition to the project.

3. The [p]roposed [u]se will not conflict with the existing character of the neighborhood.

We agree with the court that the Board's factual findings set forth in the resolution are deficient, preventing appropriate review.  As the Law Division stated, the resolution came to its legal conclusions without referencing which ordinances, standards, or provision of Teaneck's Master Plan would have

conflicted with the subdivision. See N.Y. SMSA, 370 N.J. Super. at 319 (finding a municipal board's resolution "substantively deficient" because "a mere recital of testimony or conclusory statements couched in statutory language," without any actual analysis, precludes the reviewing court's ability to evaluate the basis for the board's decision); CBS Outdoor, Inc. v. Lebanon Planning Bd., 414 N.J. Super. 563 (App. Div. 2010) (remanding a Board resolution where although it "provides a lengthy summary of the proceedings" on the application, it did not "focus upon the 'specific deviation[s]'" from the standards "and whether those deviations affected the suitability of the site for the proposed use"). It also found that the Board's resolution was unclear as to why it concluded the subdivision "would be 'in conflict with the character of the neighborhood,' which is one of single[-]family homes." Thus, as noted, "[a]t a minimum, the legal insufficiency of the resolution in this case warrants a remand to the Board for reconsideration and specific factual findings." N.Y. SMSA, 370 N.J. Super. at 335 (citing Smith, 335 N.J. Super. at 123).

We also disagree with plaintiff and concur with the court's conclusion that a reversal of the Board was not "clearly compel[led] by the record," see ibid. For example, with respect to the propriety of a (c)(2) variance, the Law Division acknowledged the possibility that plaintiff "cannot meet the criteria, and the

Board's decision should be upheld," but that the court could not make such a "determination based upon the record below or based upon the Board's resolution." Having reviewed the parties' briefs, the Law Division also noted that neither party "cites to those provisions of the Master Plan on which the Township relies or cites to the specific language of the Zoning Ordinances which will support either the granting or denial of the variances and subdivision." In this regard, the Law Division properly remanded the matter to the Board to explain and amplify its bases for its February 8, 2018 resolution and make more specific factual findings in the first instance.

In sum, we agree with the Law Division judge's conclusion that the Board's resolution lacks the requisite fact-finding. We therefore affirm the provision of the trial court's December 18, 2018 order remanding the matter to the Board. On remand, the Board shall determine plaintiff's entitlement to the requested variances under N.J.S.A. 40:55D-70(c)(1) and (2) in conformity with this opinion. In making this determination, the Board should consider all the evidence presented at the hearing on plaintiffs' application and issue an amended resolution, setting forth specific findings of fact to support its decision. Nothing in our opinion should be construed as suggesting our view on the outcome of the remanded proceedings.

We vacate the trial court's ruling that the Board's decision was arbitrary, capricious, or unreasonable in light of our remand to the Board.

To the extent that we have not addressed any of plaintiff's remaining arguments, we conclude that they lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed in part and vacated in part.  Jurisdiction is not retained.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2239-18T4