MOBIL OIL CORPORATION, a corporation of the State of New York, Plaintiff in Error,

v.

The BOARD OF ADJUSTMENT OF the TOWN OF NEWPORT, Delaware, et al., Defendants In Error.

Superior Court of Delaware, New Castle.

Oct. 26, 1971.

**838**

James F. Kipp (of Becker & Kipp), Wilmington, for plaintiff in error.

Samuel H. Lewis (of Twilley, Barrett & Lewis), Wilmington, for defendants in error.

STIFTEL, President Judge.

Mobil Oil Company wants to build a gasoline filling station on the northwest corner of James and Justice Streets in the Town of Newport, Delaware. For this purpose, it has leased this property from Jennings Wroten and his wife and filed for a building permit[1] with the Town. The permit was denied by the Building Inspector and Mobil appealed to the Town Board of Adjustment for a variance from a provision in an ordinance which forbids the construction of a filling station "within two hundred (200) feet of any lot line of any plot on which is located a gasoline filling station." Zoning Ordinance for the Town of Newport § 601(1) (a).[2]

After a hearing, the Board of Adjustment refused Mobil a permit because it would be located "within two hundred (200) feet of another pre-existing service station." An Esso station is located diagonally across the street on the southeast corner within 200 feet of the proposed Mobil station. The Board of Adjustment said the 200 feet prohibition was imposed:

"* * * to reduce the impact of an influx of such occupation on the character of the use of land within the Town Limits."

It then said:

"Should the proximity limitations be ignored * * * the result will have an adverse effect on the general welfare of the Town of Newport."

The Board also said:

"The members of the Board of Adjustment believe as a result of their personal observations that the needs of the public are being served by the presence of the other service stations in this area, including the service station less than 200 feet from this location."

Mobil has asked that the decision of the Board be reviewed by this Court pursuant to Title 22 Del.C. § 328.

The ordinance was enacted pursuant to the authority granted by the State in subchapter 2, Title 22, Del.Code. The Town

---

1. Article IX, Section 902(a) of Newport Zoning Ordinance recites the legislative determination that gasoline stations "may be inimical to the public safety and general welfare if located without due consideration of conditions and surroundings * * *," requires the consent of the Newport Board of Adjustment for issuance of a building permit for a gas station.

2. § 601(1) (a) reads:
 "No part of any gasoline filling station * * * nor any dirveway, entrance or exit to or from any such filling station or garage, shall be within two hundred (200) feet of any lot line of any plot on which is located any building used as a theater, auditorium, church, hospital, school or institution for dependents or children, or any public playground or athletic field. No gasoline filling station, nor any driveway, entrance or exit to or from such filling station shall be within two hundred (200) feet of any lot line of any plot on which is located a gasoline filling station."

gave the area in question a commercial zoning classification. Thus, this type of business had already been permitted to operate in this particular area. If the proposed Mobil station were 201 feet from the neighboring Esso station, it would appear from the record that a permit to build would have been granted.

Mobil claims that the 200 ft. requirement, as applied to its leased land, is unconstitutional because it is arbitrary, unreasonable and confiscatory.

 Generally, the zoning authorities, acting within their prescribed legislative powers, have a wide and liberal discretion. One who attacks a decision as arbitrary and unreasonable has the burden of showing that it is so. See McQuail v. Shell Oil, Sup.Ct. 40 Del.Ch. 396, 183 A.2d 572, 578. Essentially, defendants justify the existence of the 200 ft. restriction in the ordinance because of the traffic problems and the danger of fire and explosion.

At the hearing, Mobil produced four witnesses—a marketing representative of Mobil, a Mobil district engineer, a mortgage loan officer and real estate appraiser for a local building and loan corporation, and a transportation engineer, who is an assistant professor of civil engineering at Villanova University.

The district engineer said that they intended a three-bay station, that he could see no fire danger or traffic back-up. He explained that with tight hose connections on the truck and the gravity flow type fill from the truck to the tank in the ground, made remote the possibility of fire. Of course, there could be some spill in separating the hose from the tank and allowing the gas to fall out on the roadway; but normally, this is prevented by shutting off a valve, which would substantially restrict the amount of gas that would leave the pump. In his past five years with the Company, he never knew of any fire from any spillage. He further explained that there was no danger to pedestrians, that there would be a 19 ft. sidewalk and that

the gasoline island would be considerably back from the highway. He emphasized that it would be safe for the station to be within 200 feet of another station.

Mr. Ciesielski, the transportation engineer, mentioned that a freeway is contemplated nearby which would reduce the amount of vehicles in the area upon completion. He explained that presently the average vehicular daily traffic counts are "rather large in the sense that Justice has approximately 18,000 vehicles on it and James, apparently, has about 24,000 vehicles." Then he mentioned that a new station, if anything, would be more convenient "in the sense that we would afford a driver the ability to ingress rather easily for fuel without anticipating or encouraging him to try to cross over the two oncoming traffic or northbound lanes of traffic." Further, the presence of a station instead of a building, which is there now, would improve visibility at the intersection.

The real estate appraiser stated that there would be no depreciation of property as a result of the installation of the service station and that to the owner a service station would be worth more than double what it is presently worth. In fact, he said, the presence of the station would have a good effect on commercial properties north of James Street.

No witnesses appeared for defendants. A Mr. Clifton, a member of the audience, who owned a Gulf station approximately two blocks from the proposed station, suggested that the Town economically did not really need another station, that his business was not good and that the Town had already had three stations go out of business recently.

It is difficult to understand why the 200 ft. restriction was enacted. A filling station is no greater threat to safety than many other businesses that could be located there—a drive-in restaurant, drive-in bank, or car wash—that are not similarly restricted. A station 200 feet away would be no more fire hazard than one that was 205

feet away. The real estate appraiser indicated that there are other businesses that are now allowed there that are greater fire risks, such as a hardware store. He also mentioned that no fire insurance rates would be increased in the neighborhood as a consequence of the station being constructed. The 200 ft. restriction makes little sense from a safety viewpoint since you cannot have two stations that occupy one-quarter of a block each if there is less than 200 feet between them; however, you can have one station, under one proprietor, occupy an entire city block with pumps located anywhere in that block. In Caudill v. Village of Milford, 10 Ohio Misc. 1, 225 N.E.2d 302, 305, the Court ruled a restriction of 150 yards unconstitutional.[3] It commented as follows:

"If the ordinance had read solely that a filling station should not be within a certain distance of a church, hospital, school, or public hall, the problem before the court would be somewhat more difficult. However, [w]here it includes a provision that [a gas station] should not be located within 150 yards of any other service station, then the purpose of the ordinance becomes quite apparent, and it is for the primary purpose of restricting and limiting the number of filling stations."

In City of Miami v. Wysong, Fla.App., 217 So.2d 603, the Florida Court refused to apply a 750 ft. restriction by saying:

" * * * The city also presented no evidence as to what hazards are prevented by establishing a 750 foot distance requirement for gasoline stations in only two zoning classifications within the city. It might be that the storage of bulk gasoline presents a serious hazard to the public of fire or explosion. This court will take judicial notice that gasoline is inflammable and explosive. We are unable to take judicial notice of what constitutes a reasonable distance requirement for public safety between one gasoline station and another, and, since there was no evidence presented on this matter, we are unable to say that the 750 foot distance requirement bears a reasonable relationship to the public health, morals, safety or welfare." (p. 605).

■ The Board worried about economics. It made a finding of fact that there were sufficient stations already in the area. But, the need or lack of need of gasoline filling stations in the area is not relevant. See La Salle National Bank v. Village of Skokie, 107 Ill.App.2d 104, 246 N.E.2d 105, 109. See, also, Lawfred Realty Service Corp. v. Waters, 15 Misc.2d 113, 178 N.Y.S.2d 907, 910.

■ It may be that older gas stations may benefit from the absence of a new modern station in the area but the public interest is not served. The petitioner is entitled to the best use of its land in a commercially zoned area. The same rule or standard should apply to it that applies to others in this zoned area. No artificial restriction should deny it the most beneficial use of its land.

■ The distance requirement is discriminatory, unreasonable and unwarranted and in violation of petitioner's constitutional rights. The determination of the Board is annulled and it is directed to issue a permit to petitioner subject to such conditions as are usually required of gasoline station operators.

3. Extensive litigation has been spawned by filling station spacing ordinances. Many disagree with *Caudill*. Generally, see Rathkopf, The Law of Zoning and Planning, Ch. 24, and Supp. p. 9; 3 Yokley, Zoning Law and Practice, §§ 28–30, and 1971 Supplement; 2 Anderson, American Law of Zoning, § 11.25. See also, related annotation, entitled "Zoning Regulations as to Gasoline Filling Stations", 75 A.L.R.2d 168.

The decision herein makes it unnecessary to determine if the Board was correct in deciding that petitioner was not entitled to a variance [4] because it had not established unnecessary hardship.

**Wife, V. K., Plaintiff,**

v.

**Husband, J. S. K., Defendant.**

Superior Court of Delaware, New Castle.

Oct. 25, 1971.

Arthur Inden, Young, Conaway, Stargatt & Taylor, Wilmington, for plaintiff.

Francis J. Trzuskowski, Connolly, Bove & Lodge, Wilmington, for defendant.

4. The Board had ruled, in addition to the rulings mentioned, as follows:

"In addition, the Board finds that the authority granted to it by Section 1007 (d) to vary the terms of the Zoning Ordinance has not been established. That provision requires a showing of unnecessary hardship. This the Board has construed to mean that the landowner must show that his property could not be devoted to any reasonable use under the Zoning Ordinance, because his lot is not suited to its present use. No evidence was offered by the application on this question. The Board concludes that the applicant failed to make a showing of unnecessary hardship and consequently, failed to establish the need for a variance from the terms of the Zoning Ordinance."