196 N.J. Super. 183 (1984)
481 A.2d 1172
EXXON COMPANY, U.S.A., PLAINTIFF,
v.
BOARD OF ADJUSTMENT OF THE BOROUGH OF BERNARDSVILLE, SOMERSET COUNTY, NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Law Division Somerset County.
Decided May 10, 1984.
*185 Vincent T. Bisogno for plaintiff (Bisogno & Loeffler, attorneys).
John T. Lynch, for defendant.
IMBRIANI, J.S.C.
Is an ordinance prohibiting the erection of a gasoline service station within 500 feet of an existing gasoline station constitutional? And if so, was the decision of the board of adjustment to deny this application solely because it violated said ordinance arbitrary, unreasonable and capricious?
Exxon Company applied to the board of adjustment for a variance to erect a gasoline service station on vacant property *186 at the southeast corner of a high traffic intersection at U.S. Route 202 and North Finley Avenue, Bernardsville, New Jersey. The lot is zoned C-1, commercial district, which permits a variety of "business uses of a retail sales and service type" and also allows several specific conditional uses, including that of "public garages," which are defined to include "motor vehicle service or filling stations."
The ordinance provides that a conditional use shall be approved provided it will not be detrimental to the public health, safety and general welfare and, in the case of "public garages," complies with a series of ten restrictions and conditions. Exxon complied with all of them except the tenth restriction which is that:
[n]o gasoline filling station may be erected within 500 feet of an existing gasoline station. [§ 12:19.26]
The area abounds with commercial activity. A contiguous lot on the same block has a large building used for bowling and recreational purposes. The northeast corner of the intersection is occupied by an Amoco service station, the northwest corner by a dry cleaning building and the southwest corner by a colonial building recently approved for conversion into a small hotel to contain less than fifty rooms.
The evidence at the public hearings revealed that Exxon would use the premises for the sole purpose of selling gasoline and additives, such as oil and windshield wiper fluid. No repairs of any nature would be made on the premises, nor would oil or grease changes be done. For this reason no trucks or commercial vehicles would be parked on the premises unless they go there either to purchase gasoline or additives or to deliver inventory.
The only structures to be built would be a small kiosk to provide shelter and bathroom facilities and a canopy to cover the pump islands.
Initially, Exxon sought four variances but during the pendency of the appeal it acquired sufficient contiguous property to *187 make unnecessary all of the variances, except from the proximity requirement. The Amoco station located directly across the street lies within 500 feet of these premises.
A review of zoning proximity requirements should commence with Harvard Ent., Inc. v. Bd. of Adj. of Tp. of Madison, 56 N.J. 362, 363 (1970) which upheld a 2,000 feet proximity requirement for gasoline stations and said that to "sustain its position, plaintiff had to demonstrate that the problems traditionally associated with gas stations  fire, traffic, aesthetic considerations  are no greater than for other commercial uses permitted in the same area." Id. at 369. And of special significance is the concurring opinion of Justice Hall, who supported the decision because the record was incomplete and precluded an in-depth review of the issue, but said he was "convinced that it is time for judicial reconsideration of filling station zoning restrictions, including especially those dealing with a required distance between stations." Id. at 370.
Exxon offered an array of experts. A real estate representative testified of the proposed operation at the station which was to sell only gasoline and additives and not perform such work as oil, grease or antifreeze changes; nor would repairs of any nature be made on the premises. Thus, no automobiles or trucks would be stored on the premises which would make this a "very clean operation."
A fire insurance underwriter testified that not only would there be no significant fire hazard but "there will be no adverse affect on the fire insurance rates of any of the surrounding properties." This conclusion was accepted by the board which stated in its resolution that "no substantial fire risk is presented by the proposed application."
Henry J. Ney, a licensed professional engineer and planner, practicing in the field of traffic engineering and transportation, testified that a gasoline service station would not adversely affect traffic any more than a number of other commercial uses permitted in this zone; for instance:

*188 a bank would be a significantly greater traffic generator during the course of the day and particularly on the Friday evening hour. A restaurant, depending on the type, would certainly have as much movement and could have significantly more traffic movement than this facility.
It was his opinion that an office building or a retail store, both being permitted uses, would probably induce greater new traffic into the area, and that a service station such as this would not draw new traffic but merely service traffic in the area because few people go out of their way to purchase gasoline or additives. He testified that "from the standpoint of additional traffic" this station would have minimal impact upon traffic in the surrounding streets, but no matter what improvement is made it would have some impact upon traffic. He concluded that no safety problems were presented if gasoline service stations were permitted to operate close to each other because:
the studies [that] I have done and have been done by other professionals do not support a proximity regulation between service stations for [sic] a safety standpoint.
Evidence of the aesthetic impact of this proposal was offered by Elizabeth McKenzie, a professional planner, who said that a gasoline service station would not substantially impair the intent and purpose of the zoning plan and ordinance and would not be a substantial detriment to the public good. She testified that a service station "of this type" would not be an "eyesore" as would a traditional gasoline station which often has, in open view, piles of tires, parked motor vehicles being repaired, and other activities that some would regard as offensive. This facility would be a "clean operation oriented towards automobiles... and will ... not have the nuisance characteristics which are normally associated with a service station." She concluded that "the aesthetic considerations which generally motivate a 500-foot distance requirement ... is [sic] basically overcome by the type of use and structure which we are proposing." She observed that at the present time "six out of your nine existing service stations [are] located within 500 feet of another service station."
*189 The board concluded that the "applicant's traffic analysis [was] unconvincing" and agreed with the testimony of an objector, a service station operator, that the traffic counts offered by the applicant were not accurate because they were taken during weekdays when traffic is "typically ... the lowest in motor vehicle fuel activity" and should have been taken "on Saturday mornings which ... typically [was] the period of greatest traffic congestion at this intersection." The board also accepted the opinion of a competitor that this facility would do far more business than estimated by the applicant which would result in greater traffic flow than anticipated. However, unlike Mr. Ney, neither objector offered any statistics or surveys to support their conclusions.
The board also rejected as "highly subjective" testimony that the service station would be aesthetically pleasing and in harmony with the surrounding area and concluded that "the appearance and facility is contrary to the predominant development patterns in the area and its placement in close proximity to the existing Amoco service station magnifies the impact."
Since Harvard, distance requirements for business enterprises, especially for gasoline stations, have been increasingly questioned throughout the nation. See cases collected in 2 Anderson, American Law of Zoning, § 15.31 (Cum.Supp. 1983). Proximity requirements were upheld in Harvard, due in large part to the absence of a complete record below; Lynch v. Gardner, 15 A.D.2d 562, 222 N.Y.S.2d 955 (1961) because the zoning board lacked statutory power to grant such special permits; and Stone v. City of Maitland, 446 F.2d 83 (5 Cir.1971) which opined that one result of too many gas stations in an area is abandoned stations:
which in most instances cannot be used for any other commercial purpose, becoming magnets for junk cars and sometimes havens for mice, rats and insects ... [and] the neighborhood soon becomes a blighted eyesore and one greatly diminished in aesthetic and commercial appeal. [at 89].
But similar ordinances were struck down in Caudill v. Village of Milford, 10 Ohio Misc. 1, 225 N.E.2d 302, 305 (1967) as *190 constituting the taking of "property without due process of law," City of Miami v. Woolin, 387 F.2d 893, 894 (5 Cir.1968) which noted that "of the 456 stations in the city, 448 were within the prohibited distance of each other," Mobil Oil Corp. v. Bd. of Adj., 283 A.2d 837 (Del. Super. Ct. 1971) which expressed the anomoly that:
you cannot have two stations that occupy 1/4 of a block each if there is less than 200 feet between [them, but] you can have one station under one proprietor occupy an entire city block with pumps located anywhere in that block. [at 840].
and Darrell v. Governing Body of Tp. of Clark, 169 N.J. Super. 127 (App.Div. 1979) which affirmed the granting of a variance to allow construction of a gasoline station within 1,500 feet of existing stations in violation of the zoning ordinance.
But most compelling and similar to this case is Davidow v. Bd. of Adj. Tp. of South Brunswick, 123 N.J. Super. 162 (App.Div. 1973) where an ordinance conditionally permitted a motel and restaurant if located "at intervals of not less than 5,000 feet from the same use along one side of a highway." Id. at 164. Only the applicant presented witnesses, one of whom opined that the sole effect of the proximity requirement was "to limit the number of motels, thereby effectively restricting competition." Id. at 165. There was an absence of proof from the municipality and the court concluded that there was no rational basis for the proximity requirement which was unduly discriminatory and arbitrary and did not in any way attempt to achieve the stated purpose of a comprehensive zoning plan.
The denial of this application was bottomed on concerns for traffic and aesthetics. And, as in Davidow, "[n]o proofs were submitted by the Board or the Township in support of the ordinance." Id. at 166. Indeed, when this court asked the governing body if it wished to participate in these proceedings, it declined. What the board apparently relied upon to deny this application were their own opinions and the lay opinions of some 19 objectors (10 were non-residents and 6 had an interest in an area gas station) who testified that if a variance were *191 granted traffic would increase, the character of the town would change, and the town could not economically maintain another gas station. Over objection and in spite of the admonition of Seabert v. Dover Tp. Bd. of Adj., 174 N.J. Super. 548 (Law Div. 1980) and N.J.S.A. 40:55D-10(d) a petition with 1,331 signatures opposing the application was placed in evidence. The board was instructed by its attorney to give the petition "such credence as it sees fit" but to bear in mind that "the applicant doesn't have the opportunity to cross examine" the signatories. Nonetheless, one must assume that a petition of this size in a municipality of 7,000 was not completely disregarded as it should have been. Not a single professional expert was offered in opposition.
While the resolution was silent as to the economic impact of an additional competitor, the record is replete with concerns expressed by both board members and the opposition, of the potential adverse economic impact competition might have upon other gas station operators in the area. This concern was answered in Mobil Oil Corp., supra, which said:
The need or lack of need of gasoline stations in the area is not relevant. [citations omitted]. It might be that older gas stations may benefit from the absence of a new modern station in the area but the public interest is not served. [283 A.2d at 480; emphasis supplied]
The board's conclusions were not supported by substantial credible evidence. Based almost exclusively on the testimony of two competitors the board concluded that "the proposed use may well have a more severe adverse affect on traffic safety than suggested by the applicant." (emphasis supplied). Obviously anything is possible. What is required of the board is that they ground their conclusions on specific evidence in the record, not speculate on what "may" occur. This the board failed to do. No surveys or independent traffic counts were offered by the board or the objectors.
Moreover, its opinion as to the adverse aesthetic impact on the surrounding area is premised on even less evidence. Other than the conclusory, lay opinions of several objectors, the *192 record was barren of evidence that the proposal was "contrary to the predominant development pattern in the area." The board did not explain how it arrived at this opinion. The resolution stated that the board "finds no affirmative reasons" to place this proposal on the "fringe of a village-type retail district" surrounded by a "substantially developed residential district." What the board neglected to state was what it meant by a "village-type retail district," that the residential district is already adjacent to these commercial gasoline stations in this area. Nor does it explain how or why an Exxon gasoline service station would violate the "predominant development pattern in the area" when an Amoco station already exists across the street. The court cannot understand, nor did the board make clear, why another gasoline service station would have an adverse aesthetic impact on an area already teeming with commercial activity.
Exxon argues that the proximity requirement violates the Equal Protection Clause of the federal and state constitutions because other commercial uses in the same area are not subject to a proximity requirement. A wide range of commercial activities are permitted in a C-1 zone but only gasoline service stations are subject to a proximity requirement. It asks why can banks, restaurants and dry cleaners be constructed adjacent to each other, but only gasoline service stations must be separated by at least 500 feet? And what is so sacrosanct about 500 feet? The municipality declined to address these questions.
In addition to satisfying the statutory requirements a zoning ordinance must also comply with the equal protection commands of our federal and state constitutions, which do "not require that government treat all persons identically ... [but] only that differences in treatment of persons similarly situated by justified by an appropriate state interest." Taxpayers Assn. of Weymouth Tp. v. Weymouth Tp., 80 N.J. 6, 37 (1976). And *193 "the burden is on the party attacking the classifications." Id. at 37.
As said in Stone v. City of Maitland, supra, although government senses and deals with a specific evil "it is under no compulsion to deal with all other evils that are seen to be equally serious." 446 F.2d at 28. The Equal Protection Clause only requires that distinctions not be irrational or discriminate invidiously. Police Dept. of City of Chicago v. Mosley, 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972). There are many reasons why one evil may be addressed to the exclusion of others.
Evils in the same field may be of different dimensions and proportions, requiring different remedies ... Or the reform may take one step at the time, addressing itself to the phase of the problem which seems most acute to the legislative mind. Williamson v. Lee Optical of Oklahoma, 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563, 573 (1955). [408 U.S. at 95, 92 S.Ct. at 2289, 33 L.Ed. at 216]
Bernardsville has seen fit to subject certain uses, of which public garages are one, to the conditional use provisions of this ordinance. This technique permits the municipality to specially review an application before such a use is permitted and gives the municipality an opportunity to estimate the harm which could result from such a use. A use permit may be granted subject to conditions which would protect and preserve the neighborhood scheme and prevent unnecessary traffic hazards thereby protecting "the health, safety, and general welfare of the Borough residents." Ord. 12-19.1b.
While the proximity requirement is applicable only to public garages, and not other conditional uses, this court cannot conclude that this distinction is irrational or invidiously discriminatory. A municipality may well perceive of problems which relate only to gasoline service stations that dictate the adoption of a proximity requirement for it but not other commercial ventures. A court will not assume that such a distinction is irrational or invidiously discriminatory. The burden of proving *194 otherwise is on the applicant and it has failed to do so. Ordinances may not be set aside easily.
There is a strong presumption in favor of its validity, and the court cannot invalidate it, or any provision thereof, unless this presumption is overcome by a clear showing that it is arbitrary or unreasonable [citations omitted]. Furthermore, an ordinance that may operate reasonably in some circumstances and unreasonably in others is not void in toto, but is enforceable except where in the particular circumstances its operation would be unreasonable and oppresive. [Harvard Ent., Inc. v. Madison Bd. of Adj., supra 56 N.J. at 368].
The court concludes that the ordinance does not violate the Equal Protection Clause of either the federal or state constitutions.
However, the board does not have arbitrary powers. The standards for review and the policy to be implemented are clearly enunciated in the ordinance and the ultimate decision must bear a real and substantial relation to that end.
The board gave no reasons or explanations why it accepted the estimates of traffic flow from gas station competitors, but rejected the testimony of a professional engineer and planner who specialized in traffic engineering and transportation. And even more unclear is how or why it concluded that the proposed service station was "contrary to the predominant development patterns in the area." A gasoline station already exists across the street and the area flourishes with commercial activity. The decisions of a municipal agency must be grounded in a rule of reason. This court can find no rational or reasonable basis for the denial of the variance. The evidence before the board of adjustment clearly and convincingly indicated that no safety problems would arise from the granting of this variance, that any traffic problems would be minimal, and that the design and use of the proposed service station would be consonant with existing neighborhood pattern and scheme.
For these reasons the court concludes that the decision to deny the variance was arbitrary, unreasonable and capricious. It is reversed and the board is directed to grant a variance from the proximity requirements of the ordinance. The matter is *195 remanded to the municipality for such further reviews as are required by its ordinances.