K. HOVNANIAN AT LAWRENCEVILLE, INC., PLAINTIFF, v.
LAWRENCE TOWNSHIP MAYOR AND
COUNCIL, DEFENDANTS.

Superior Court of New Jersey
Law Division Mercer County

Decided April 15, 1988.

*Bruce D. Greenberg* appeared for plaintiff (*Greenbaum, Rowe, Smith, Ravin, Davis & Bergstein,* attorneys).

*Andrew M. Kusnirik, III* appeared for defendants (*Bocchini and Blake,* attorneys).

The opinion of the court was delivered by

LEVY, J.S.C.

*N.J.S.A.* 40:55D–53 authorizes enactment of an ordinance to assure the installation and maintenance of on-tract improvements as a condition of subdivision, site plan or zoning approval. The legislative scheme permits posting of a performance bond for up to 120% of the cost of installation, release from liability on the performance bond upon approval of the improvements by the governing body, and posting a maintenance bond for no more than two years after final acceptance of the improvement, not exceeding 15% of the cost of the improvement. The within matter involves an action by a developer against a municipality for release of liability on performance bonds, pursuant to *N.J.S.A.* 40:55D–53(e); it was presented to the court on motion for summary judgment pursuant to *R.* 4:46–1 *et seq.*

Plaintiff obtained site plan approvals for construction of a condominium project known as Society Hill at Lawrenceville. It deposited a performance guarantee for soil erosion control measures of $33,985.80, consisting of a 90% surety bond and 10% cash, as well as another performance guarantee for public improvements for the entire project in the amount of $2,246,960, again consisting of 90% by surety bond and 10% cash. The final site plan approvals were granted in June 1983 and the bonds were delivered to the municipality on August 22, 1983.

*N.J.S.A.* 40:55D–53(d) states:

Upon substantial completion of all required appurtenant utility improvements, and the connection of same to the public system, the obligor may notify the governing body in writing, by certified mail addressed in care of the municipal clerk of the completion or substantial completion of improvements and shall send a copy thereof to the municipal engineer. Thereupon the municipal engineer shall inspect all improvements of which such notice has been given and shall file a detailed report, in writing, with the governing body, indicating either approval, partial approval or rejection of such improvements with a statement of reasons for any rejection. The cost of the improvements as approved or rejected shall be set forth.

Plaintiff, as obligor, duly notified the governing body pursuant to this statute, and the municipal engineer inspected the

project as required.  Under date of October 15, 1987, Graham J. Macfarlane submitted his engineer's report to the Director of Community Development.  In this report, prepared in compliance with the statute, he indicated approval of the soil erosion control measures and the on-site improvements and partial approval of the off-site improvements.  The partial approval was due to his dissatisfaction with three specified items dealing with surface paving, curb installation and pavement widening.

*N.J.S.A.* 40:55D-53(e) states, *inter alia:*

The governing body shall either approve, partially approve or reject the improvements, on the basis of the report of the municipal engineer.... Where partial approval is granted, the obligor shall be released from all liability pursuant to its performance guarantee, except for that portion adequately sufficient to secure provision of the improvements not yet approved; provided that 30% of the amount of the performance guarantee posted may be retained to ensure completion of all improvements.

At a public meeting on November 16, 1987, the governing body unanimously voted not to release anything, basing their decision on the receipt of numerous letters from residents of the Society Hill complex describing alleged deficiencies.  The municipal governing body decided to deny the release because it found it had the discretion to do so until the deficiencies alleged by the residents were completed or substantially completed. The resolutions which resulted from the public hearing, known as Resolutions # 418–87 and # 419–87, provided for the release of the performance bonds as recommended by the municipal engineer, but each noted at the very end: "Defeated: November 16, 1987."  The resolution itself contains no reason whatsoever for the failure to release the amount of surety and cash recommended in the body of the resolution.

The record of the meeting indicates that after the first resolution was moved and seconded, a member of the council stated that she would not vote to release the bond because she had spoken with a resident in the area who had expressed problems with erosion and drainage in the project.  Another member of the council expressed dissatisfaction with the engineer's report in that it did not specify exactly what items the

retainage would cover with regard to the bonding of off-site improvements.

A council member stated that the Community Development Director, in reporting what the engineer had to say, did not indicate, in exact language, that there was "substantial completion," so the council was unable to judge whether they could partially release the bond or could "go against the advice of our staff and say no to the release." Another councilman expressed the opinion that the retainage would not be enough to cover the improvements that had to be done.

The record indicates that the concerns of the homeowners association had been forwarded, through the engineer, to the plaintiff, well before it applied for release of its bonds. Corrections were made, the engineer inspected the project and made his recommendations. No evidence by way of counter-expert testimony to the engineer's findings was offered by anyone. The council did not specifically reject the engineer's recommendations. Rather, various members expressed dissatisfaction with his failure to use the words "substantial completion." The council expressly relied on the submissions by the residents in denying the proposed resolutions. At the time of the motion for summary judgment, defendants attempted to present further letters of complaint from residents as an attachment to their brief; these were rejected by the Court as being outside the record. Similarly, photographs offered at oral argument were rejected by the Court since they were not presented to the Township Council at the time it made its determination. There is nothing in the record before the Township Council to indicate that any modification of the engineer's report is warranted. The Township Council knew that the citizens living in the project had come forward with many complaints, and that these complaints had been forwarded by the township engineer to plaintiff who had attempted to remedy them. Apparently the remedy was satisfactory to the municipal engineer. At the hearing, the homeowners association advised that there were still problems, but this does not amount to sufficient evidence

to support a determination contrary to that recommended by the municipal engineer.

*N.J.S.A.* 40:55D–53(d) is triggered when the developer-obligor alleges it has substantially completed "all required appurtenant utility improvements, and the connection of same to the public system." The municipal engineer is to inspect the improvements to determine whether or not the alleged state of completion is sufficient to approve release of the performance guarantee, and to report his findings and recommendations to the governing body. In that report, he must approve, partially approve or reject the improvements, and he is only required to state reasons for a rejection. He need not expressly state that there has been substantial completion, as the degree of completion is presumed from his complete or partial approval of the improvements. Similarly, the lack of substantial completion is presumed from his rejection. Where the municipal engineer performs in accordance with the statute, the obligor is entitled to have the recommendation of the engineer enforced. The report is presumptively valid, and if the governing body fails to act within 65 days, there is automatic approval of the improvements and release of the performance guarantees. *See, N.J.S. A.* 40:55D–53(e). The action of the governing body must be based on the report of the engineer, and the report cannot be rejected without some competent evidence to the contrary.

When that engineer reported that all soil erosion control measures for the project had been completed and were acceptable, without competent evidence to the contrary, the governing body was required by *N.J.S.A.* 40:55D–53(e) to release plaintiff from all liability therefor based on the engineer's report. Similarly, when the engineer partially approved, rather than rejected, the public improvements, and found that there was substantial completion, the Township Council was required to release plaintiff from at least 70% of its original liability, because there was no competent evidence to contradict the report. Here the engineer recommended a 30% retention, but

the record fails to show any valid reason for the Township Council's rejection of that proposal. Defendants' belated attempt to submit a collection of letters forwarded to them after the rejection of the application to release the bonds, continued up to the time of oral argument before this court, is indicative of the unreasonable and arbitrary nature of their action.

Defendants argue that they had "inherent discretion to either accept or reject the recommendation of their professional staff." One cannot argue with that proposition, but the discretion cannot be based on incompetent evidence. Here, members of the council referred to statements made by residents at some place other than the hearing, nothing was presented to indicate that the engineer's conclusions were improper and the lack of such evidence can only mean that the defendants acted arbitrarily and capriciously and unreasonably. Certainly the motion for summary judgment must be based on what happened at the public hearing, and the defendants' claim that its "continuing receipt of complaints detailing deficiencies regarding the completion of the Society Hill complex" is insufficient to set up factual issues to bar the entry of summary judgment. That argument has no merit.

Here the action of the Township Counci was in direct violation of the requirements of the statutes cited above, and thus lacks legal authority. It is void *ab initio* and has no legal effect. See *Hilton Acres v. Klein*, 35 *N.J.* 570, 581 (1961); *Popp Realty v. Springfield Twp. Bd. of Adj.*, 176 *N.J.Super.* 441, 454 (Law Div.1980). Where the engineer, in the exercise of his professional judgment, evaluated the complaints of the neighbors and determined that the entire soil erosion control bond and 70% of the public improvement bond should be released, his recommendations cannot be completely rejected without the expression of any reason and without consideration of competent evidence to the contrary. Thus the municipal council's rejection of plaintiff's application was arbitrary. See

*Exxon Co. v. Bernardsville Bd. of Adj.,* 196 *N.J.Super.* 183, 191–192 (Law Div.1984).

Summary judgment is granted on the first count of the complaint. Defendants are ordered to release the soil erosion bond and the related cash deposit as well as 70% of the bond and cash deposit for general improvements. Any interest which has accrued on the deposits shall also be paid to plaintiff. This ruling does not affect the defendant's ability to impose a maintenance guarantee pursuant to *N.J.S.A.* 40:55D–53(a)(2).