714 A.2d 995 (1998)
314 N.J. Super. 366
LINCOLN HEIGHTS ASSOCIATION, a Non-Profit Corporation of the State of New Jersey, Plaintiff,
v.
TOWNSHIP OF CRANFORD PLANNING BOARD, Edwards Super Food Store, Crane Realty, L.P., and Township Committee of the Township of Cranford, Defendants.
Superior Court of New Jersey, Law Division, Union County.
Decided February 6, 1998.
*997 Jeffrey Kantowitz, West Orange, for plaintiff (Goldberg, Mufson & Spar, attorneys).
John J. Russo, for defendant Township of Cranford Planning Board (Joseph P. Depa, Jr., attorney, Cranford).
Brian W. Fahey, Springfield, for defendants Edwards Super Food Store and Crane Realty, L.P. (Fahey & Fahey, attorneys).
Albert N. Stender, Cranford, for defendant Township Committee of the Township of Cranford (Stender & Hernandez, attorneys). *996
*998 PISANSKY, J.S.C.
This prerogative writ action concerns the construction and operation of a grocery store as a conditional use in the Township of Cranford.
On August 5, 1996 Edwards Super Food Store (Edwards) filed a preliminary and final major site plan application for the conditionally use of a grocery store on property located within the ROI-3 zone as designated by the Cranford Land Development Ordinance (CLDO). The CLDO provides that a grocery store is a conditional use in the ROI-3 zone.
In Cranford, a site plan applicant seeking to operate a grocery store as a conditional use must satisfy five specific standards as listed in CLDO sec. 136-35(B)(17)(a) through (f). Subsections (a) through (e) concern access to major arterial roads, minimum lot area and frontage, set backs of building walls, minimum building size and off-street parking requirements. CLDO sec. 136-35(B)(17)(f) (hereinafter subsection (f)) provides, "[o]ther yard and building requirements shall comply with the ROI-3 Zone standards unless superseded above." There is no dispute that Edwards satisfied the requirements of subsections (a) through (e); only subsection (f) is at issue.
In its application, Edwards sought four waivers from development requirements and standards relating to (1) lighting, (2) signage, (3) a 10% landscaping coverage requirement for the parking lot area, and (4) the size of parking stalls. These requirements, termed "design standards: specific" under CLDO sec. 136-23, are part of CLDO Article IV entitled "Development Requirements and Standards." On the other hand, Cranford's zoning requirements or standards are set forth in Article V entitled "Zoning."
The conditional use and site plan application was considered by the Cranford Planning Board (Board) during public hearings held on September 25, October 16, and November 6, 1996. During the hearings, the Board heard voluminous expert and public testimony regarding the Edwards application. At the conclusion of the November 6 hearing, the Board voted 7-1 to approve the conditional use and site plan application with waivers and conditions. Waivers from the land development requirements were granted relating to lighting, signage and landscaping coverage of the parking lot area, but the applicant's request for waiver relating to the size of parking stalls was denied. On December 4, 1996, the Board adopted a resolution memorializing the Board's approval of the application with waivers and conditions.
Plaintiff, Lincoln Heights Association (LHA) is a citizens' rights group whose members are local residents opposed to the proposed grocery store site. They challenge the site plan approval with waivers claiming (1) the Board did not have jurisdiction to consider Edward's application; (2) the Board considered unsworn written petitions in support of Edward's application and in violation of the public's right to cross-examine witnesses; (3) a Board member whose parents live in close proximity to the proposed grocery store site and whose parents' names appeared on petitions submitted in support of the application should have disqualified himself due to an alleged conflict of interest, because his parents would have directly benefited from approval of the application; (4) Board members who made statements in favor of a grocery store in Cranford during a political campaign for municipal office in the year preceding the Edwards' application should have disqualified themselves because they prejudged the application; (5) the public was denied its right to cross-examine an expert traffic witness who was unavailable on the third and final day of public hearings on the application; (6) the Board's resolution approving the application was inadequate and legally insufficient; and (7) the Board's decision was otherwise arbitrary and capricious[1].
I. WHETHER JURISDICTION LIES WITH THE PLANNING BOARD OR THE ZONING BOARD OF ADJUSTMENT
LHA argues that the zoning board of adjustment had exclusive jurisdiction to consider *999 this site plan application for a conditional use. LHA contends that Edwards did not satisfy the specific criteria for the conditional use of a grocery store within the ROI-3 zone. Edwards allegedly was unable to satisfy the subsection (f) requirement that all grocery store conditional use applicants also satisfy all general zoning requirements in the ROI-3 zone[2]. Edwards is accused of deviating from general zoning requirements which are incorporated by reference as a specific conditional use requirement unique to a grocery store. LHA contends that deviation from this specific conditional use requirement requires a "d" variance which only the Board of Adjustment has authority to grant pursuant to N.J.S.A. 40:55D-70(d)(3). Therefore, LHA concludes, the Board did not have authority to waive this specific requirement.
Edwards disagrees with the LHA's characterization of its application as a request for variance from a specific conditional use requirement. Edwards argues that the Board had jurisdiction to hear this matter pursuant to N.J.S.A. 40:55D-60 and N.J.S.A. 40-55D-67. Edwards further claims to have satisfied all of the specific conditional requirements and, therefore, there was no need to secure a variance from the Board of Adjustment. Edwards claims that the waivers that were granted related to general development and design requirements and not to general zoning requirements. Furthermore, Edwards maintains, in the alternative, that subsection (f) is not a specific conditional use requirement, but is rather a reference to general requirements of all uses within the ROI-3 zone relief from which may properly be had from the Board in the form of a waiver or "c" variance.
Jurisdiction over site plan and conditional use applications lies ordinarily with the planning board. N.J.S.A. 40:55D-67. The planning board also has the authority to permit variances from any requirement generally applicable in the zone which are ancillary to its review of a site plan or conditional use application; such variances are commonly referred to as "c" variances. N.J.S.A. 40:55D-60; N.J.S.A. 40:55D-70(c); White Castle v. Planning Board of Clifton, 244 N.J.Super. 688, 583 A.2d 406 (App.Div.1990), certif. den. 126 N.J. 320, 598 A.2d 880 (1991); William M. Cox, New Jersey Zoning and Land Use Administration, Sec. 17-3 (1997). The planning board also has authority to grant waivers and exceptions from sub-division and site plan ordinances pursuant to N.J.S.A. 40:55D-51(b)[3], but the planning board has no authority to waive or alter a conditional use standard. Wawa Food Market v. Planning Bd., 227 N.J.Super. 29, 34-38, 545 A.2d 786 (App.Div.1988). Relief from specific standards contained in a zoning ordinance may be sought only through the variance procedure pursuant to N.J.S.A. 40:55D-70(d)(3), since a "variance" is the only procedure by which one may seek "permission to depart from the literal requirements of a zoning ordinance...." Id. at 36, 545 A.2d 786 (quoting N.J.S.A. 40:55D-70).
Therefore, an applicant who deviates from a conditional use standard must seek relief from the board of adjustment, which has exclusive jurisdiction to grant variances permitting a "deviation from a specification or standard ... pertaining solely to a conditional use;" such variances are commonly referred to as "d" variances. N.J.S.A. 40:55D-70(d)(3) (emphasis added); White Castle, supra; PRB Enterprises, Inc. v. South Brunswick Planning Board, 205 N.J.Super. 225, 500 A.2d 732 (App.Div.1985).
Consequently, to determine where jurisdiction lies in the instant case, this court must *1000 determine the type of requirements from which waivers were sought and granted. LHA contends that the subsection (f) requirements were specific to the conditional use of a grocery store. Edwards contends that those requirements were not specific to the conditional use of a grocery store but were general zoning conditions relief from which could be had from the Board in the form of a waiver or a "c" variance.
Subsection (f) requires that the "yard and building requirements ... comply with the ROI-3 standards." The schedule of area, yard and building requirements for each of Cranford's several zones, including the ROI-3 zone, are found at the end of the CLDO in a table designated as "Schedule 1". There is no dispute that Edward's application complied with these requirements relating to minimum lot size, minimum yard areas and setbacks and the like and Edwards did not seek or require waivers or variances from same. In this regard, Edward's application complied with subsection (f) for the conditional use of a grocery store in the ROI-3 zone and did not require a variance from any of the specific conditional use requirements. Therefore, jurisdiction was properly before the planning board and the planning board was obligated to approve the conditional use application. See Exxon Co., U.S.A. v. Livingston Tp. in Essex Cty., 199 N.J.Super. 470, 489 A.2d 1218 (App.Div.1985).
Furthermore, it is clear that the standards from which Edwards sought waivers were site plan design standards which the planning board had authority to waive when it found that adherence to those standards were impracticable. The planning board may grant exceptions from design standards set forth in subdivision and site plan ordinances, but may not grant exceptions from provisions of zoning ordinances. Wawa, supra, at 34-38, 545 A.2d 786. In Cranford, there is a single land development ordinance which contains subdivision and site plan development requirements as well as general zoning requirements. Despite the fact that all of Cranford's land use and zoning requirements are part of a single ordinance, rather than two, the subdivision and site plan development requirements and design standards are part of Article IV and the general zoning requirements are part of a discrete section of the CLDO referred to as Article V. In essence, Article IV contains design standards which are waivable by the Board and Article V contains zoning requirements which are not. Since the requirements at issue in the instant case relating to signage, lighting, parking lot stall size and landscaping are clearly design standards part of Article IV and were applicable to all uses in all zones, these design standards did not "pertain solely to a conditional use" and the Board had jurisdiction to grant waivers and exceptions to these requirements.
II. WHETHER THE BOARD IMPROPERLY CONSIDERED UNSWORN WRITTEN PETITIONS
LHA claims that the Board's acceptance of unsworn, written petitions of supporters of the site plan application was improper. This claim is without merit.
The law concerning receipt of unsworn written petitions by municipal boards is well-defined in New Jersey. In short, the law provides that hearings on site plan and variance applications before municipal boards are quasi-judicial proceedings, and as such, the boards may consider only sworn, competent, credible testimony of individuals who are available for cross-examination. Seibert v. Dover Township Board of Adjustment, 174 N.J.Super. 548, 417 A.2d 72 (Law Div.1980); Exxon v. Bernardsville Board of Adjustment, 196 N.J.Super. 183, 481 A.2d 1172 (Law Div.1984); Cranford Land Development Ordinance, Sec. 136-4I(2). In both Seibert and Exxon, the courts reversed the boards decisions because the board admitted unsworn written petitions into evidence in violation of the public's right to cross-examine the petitioners, determine their credibility and test the merits of their objections. In those cases, the courts were also persuaded to reverse the boards' conclusions because they were otherwise unsupported by substantial credible evidence.
In the present case, the subject petitions were not offered into evidence. The petitions were never marked as exhibits or *1001 evidence during the hearings, nor were they extensively discussed or repeatedly mentioned. They were merely accepted by the Board as a matter of good public relations. Moreover, there is no indication that the petitions were ever considered by the Board for their content or substance or that the petitions played even a small part in the Board's decision to approve the site plan application. Moreover, as will be discussed at length later in this opinion, this court is convinced that there was other sufficiently competent and credible testimony in the record to support the Board's conclusions and to preclude a finding that the Board's decision was arbitrary and capricious. In these important respects, this case differs from both Seibert and Exxon and the Board's decision does not warrant reversal.
Furthermore, while the Board was obligated to consider the application in light of the facts made part of the record, the Board was not required to function in a vacuum. Kramer v. Bd. of Adjustment, Sea Girt, 45 N.J. 268, 284, 212 A.2d 153 (1965). The Board was not precluded from receiving the petitions or from considering what was common knowledge (i.e., that a number of citizens approved and others disapproved of the site plan application). Id. There simply is no evidence that the existence of these petitions played any role in the Board's final determination or that consideration of these petitions was so significant as to require judicial interference on this ground.
III. WHETHER BOARD MEMBER DENNY HAD A DISQUALIFYING PERSONAL INTEREST IN THE APPROVAL OF THE SITE PLAN APPLICATION
LHA complains that Board member Denny's parents reside in a senior citizen complex in Cranford a block away from the proposed supermarket site and the approval of the site plan application personally benefited Board member Denny insofar as he would no longer need to assist in or complete the shopping for his elderly parents. LHA contends that Denny's parents would directly benefit from the proposed supermarket because it would "alleviate the time, cost, resources, and reliance on others, including family members, that would otherwise be necessary to travel greater distances for their food shopping and other retail needs." LHA also complains that one of the petitions submitted to the Board in favor of the proposed supermarket listed Board member Denny's parents as signatories and this posed a conflict of interest for Board member Denny such that he could not remain impartial in considering the site plan application.
N.J.S.A. 40:55D-23(b) provides, in relevant part: "No member of the planning board shall be permitted to act on any matter in which he has, either directly or indirectly, any personal or financial interest." CLDO Sec. 136-4A reiterates this directive and N.J.S.A. 40A9-22.5(d) further provides:
No local government officer or employee shall act in his official capacity in any matter where he, a member of his immediate family, or a business organization in which has an interest, has a direct or indirect personal involvement that might reasonably be expected to impair his objectivity or independence of judgment. (emphasis added).
The seminal case on conflicts of interest in municipal government is Van Itallie v. Franklin Lakes, 28 N.J. 258, 146 A.2d 111 (1958). In that opinion, Justice Proctor explained:
The decision as to whether a particular interest is sufficient to disqualify is necessarily a factual one and depends upon the circumstances of the particular case. No definitive test can be devised. The question will always be whether the circumstances could reasonably be interpreted to show that they had the likely capacity to tempt the official to depart from his sworn public duty.

....
Local governments would be seriously handicapped if every possible interest, no matter how remote and speculative, would serve as a disqualification of an official. If this were so, it would discourage capable men and women from holding public office. Of course, courts should scrutinize the circumstances with great care and should condemn anything which indicates *1002 the likelihood of corruption or favoritism. But in doing so they must also be mindful that to abrogate a municipal action at the suggestion that some remote and nebulous interest is present, would be to unjustifiably deprive a municipality in many important instances of the services of its duly elected or appointed officials. The determinations of municipal officials should not be approached with a general feeling of suspicion, for as Justice Holmes has said, "Universal distrust creates universal incompetency." Id. at 268-69, 146 A.2d 111 (emphasis added) (citations omitted).
In a more recent case, the Supreme Court commented:
Actual proof of dishonesty need not be shown. An actual conflict of interest is not the decisive factor, nor is "whether the public servant succumbs to the temptation," but rather whether there is a potential for conflict. A conflicting interest arises when the public official has an interest not shared in common with the other members of the public. Another way of analyzing the issue is to understand that "[t]here cannot be a conflict of interest where there do not exist, realistically, contradictory desires tugging the official in opposite directions." Wyzykowski v. Rizas, 132 N.J. 509, 524, 626 A.2d 406 (1993).
LHA's claim that Mr. Denny was tempted to approve Edward's site application and waivers because he and his parents would benefit is speculative at best. When LHA filed the instant action to reverse the decision of the Board, LHA did not know the nature of the relationship between Mr. Denny and his parents. Yet LHA included among its claims that Mr. Denny had a conflict and would benefit financially and otherwise from approval of the application for a new supermarket in Cranford because he would no longer need to expend as much time and money assisting his parents in their grocery shopping.
Since the filing of those claims, Mr. Denny's deposition has been taken and he was questioned at length regarding his relationship with his parents and his responsibility, if any, for satisfying his parents' grocery shopping needs. Mr. Denny testified that he spoke to his parents a couple of times a week and saw them on brief visits to their residence once or twice a week. They took care of their own shopping needs by taking a two-mile, five-to-ten minute bus ride to the nearest supermarket. Mr. Denny and his wife did the food shopping for his parents, perhaps a "couple of times a year, but rarely." Mr. Denny also testified to giving his parents some financial support from time to time "as any son does." His parents pay their own rent and utilities, they do not give Mr. Denny financial support, nor does he support his parents. Furthermore, there is no evidence suggesting that Mr. Denny ever discussed with his parents the possibility of having a supermarket in close proximity to their home. In this light, it cannot reasonably be said or inferred that Mr. Denny was tugged in opposite directions by the contradictory desires of aiding himself and his parents on the one hand and serving the needs of the Cranford community on the other. There was not even the appearance of impropriety. LHA's claims to the contrary remain unsubstantiated and speculative. Mere allegation and speculation cannot form the basis for reversal of the Board's decision in this case.
Nevertheless, citing an Appellate Division case recently approved for publication, LHA maintains that the involvement of Board member Denny and the relationship his parents have to the proposed supermarket site create an impermissible conflict. In Care of Tenafly, Inc. v. The Tenafly Zoning Bd. of Adjust., 307 N.J.Super. 362, 704 A.2d 1032 (App.Div.1998), the two-member appellate panel affirmed the decision of a Law Division judge who held that a member of the Board whose mother owned a commercial enterprise approximately fifty feet from the proposed supermarket site possessed a disqualifying conflict of interest which invalidated approval of the special reasons variance. In that case, the board member's mother depended on the income derived from her commercial enterprise to "live on" and the proposed use, if granted, would have had a financial impact on her property. Id. 367-368, 704 A.2d 1032. During the pendency of the variance application, the board member *1003 was consulted by his mother regarding whether she should rent her property and what a fair rent would be. The appellate panel held: [The board member's] expressed interest in the financial integrity of his mother's commercial property was hardly "remote and nebulous." He gave his mother advice about the fairness of the proposed rental amount and the wisdom of entering into a written lease with [a tenant]. This fact underscored [the board member's] personal interest in looking after the financial health of his mother. Further, since the advice was given during the pendency of [the variance] application, his personal interest could reasonably be interpreted as having the capacity to tempt him "to depart from his sworn public duty." Id. at 373, 704 A.2d 1032 (internal citations omitted).
The instant case is materially different than the one described in Care, supra. First, Mr. Denny's parents did not have an interest in any property in close proximity to the proposed supermarket site and certainly no property within 50 feet of that site. Second, though Mr. Denny's parents had an interest in shopping for groceries at the proposed supermarket site, that interest cannot reasonably be compared with interest that the board member's mother had in avoiding financial instability to property she owned and depended on for her livelihood. Mr. Denny's mother did not have a substantial financial interest in property close to the proposed supermarket as the board member's mother had in CARE. Third, there were no meaningful discussions between Mr. Denny and his parents at any time concerning their need or desire for the proposed supermarket or the effect that such a supermarket would have on their lives. Finally, there is no evidence suggesting that Mr. Denny had a personal interest in looking after the financial, physical or other health status of his mother as there was in CARE. For all of these reasons, the instant case is distinguishable from CARE and an impermissible conflict of interest did not exist.
Moreover, there is no evidence that Mr. Denny knew that his parents' names were on one of the several petitions submitted to the Board. As previously explained, acceptance of those petitions is not prohibited and they were not admitted into evidence; and since there is no evidence indicating that those petitions played even a small part in the deliberations of the Board concerning the Edward's application, Mr. Denny's parents' names on the petitions did not create a conflict of interest for Mr. Denny or the Board. In sum, these circumstances cannot "reasonably be interpreted to show that they had the likely capacity to tempt the official to depart from his sworn public duty." Id. at 1036, 704 A.2d 1032.
IV. WHETHER THE PRE-SITE PLAN APPLICATION POLITICAL CAMPAIGN STATEMENTS OF BOARD MEMBERS DENNY AND MORIN ARE EVIDENCE OF IMPERMISSIBLE PREJUDGMENT
LHA argues that Board members Denny and Morin should have recused themselves from considering the site plan application because they actively supported a new supermarket for Cranford during their pre-application campaign as candidates for Cranford Township Committee. LHA alleges this active support shows that Denny and Morin were predisposed to approve the Edward's site plan application.
Kramer, supra, is the leading case regarding political statements of board members made during a political campaign. In Kramer, the political opinions expressed were in support of a particular application for variance by the owners of the Stockton Hotel which the campaigners later came to consider as members of the board of adjustment. Despite the particularity of the member's statements in support of the Stockton Hotel, the Supreme Court held that the plaintiffs in that case "failed to produce evidence which clearly indicates that certain members of the Board of Adjustment and governing body prejudged the Stockton application." Id. at 280, 212 A.2d 153. The court held that the statements of opinion were not a sufficient indication of prejudgment.
First, ... [t]rue from [the public statements of opinion], a reasonable mind might be left with little doubt as to where the *1004 [board members'] sentiments lay; but it is equally true that the campaign literature, the statements to the press, and all other official statements represent no more than the views of public officials pertaining to a matter of deep moment to the community.
Furthermore, there is no indication that these views touched on the actual merits of the Stockton variance.... And even if this were the case, it would not necessarily be the equivalent of personal bias or prejudice; nor would it be an indication of malice toward one or favoritism toward another. Id. at 282-83 [212 A.2d 153].
There is simply no indication that either Denny or Morin prejudged Edward's application. The campaign statements cited by LHA as indicating partiality in favor of the Edwards' application did not address the Edwards supermarket in particular, nor did they indicate the particular site on which a new supermarket was to be situated. In this regard, the political campaign statements of Denny and Morin were even more innocuous than those of the board members in Kramer. Expression in support of a general proposition during a prior political campaign does not invalidate a subsequent decision by the campaigners acting in their official capacity as planning board members.
V. WHETHER THE PUBLIC WAS DENIED ITS RIGHT TO CROSS-EXAMINE WITNESSES AT THE SITE PLAN APPLICATION HEARINGS
LHA claims that the public was denied the right to cross-examine witnesses at the site application hearings. LHA focuses on the fact that Mr. Rea, Edward's traffic engineer, was not available for cross-examination on the third and final day of the hearings.
Ordinarily, "interested parties" should have an opportunity to be heard and to cross-examine witnesses to determine the credibility of their testimony and test the merits of their contentions. N.J.S.A. 40:55D-4 and -10d; Mercurio v. DelVecchio, 285 N.J.Super. 328, 666 A.2d 1368 (App.Div. 1995), certif. den., 144 N.J. 377, 676 A.2d 1092 (1996); Village Supermarket v. Mayfair, 269 N.J.Super. 224, 634 A.2d 1381 (Law Div.1993); Cox, supra, at Sec. 27-3.2, 3.4 and 3.5. However, the board retains discretion to limit testimony and cross-examination in a reasonable manner. Village Supermarket, supra, at 238, 634 A.2d 1381.
Similarly, Cranford Land Development Ordinance sec. 136-4I(3) provides:
The testimony of all witnesses relating to an application for development shall be taken under oath or affirmation by the presiding officer, and the right of cross-examination shall be permitted to all interested parties through their attorneys, if represented, or directly if not represented, subject to the discretion of the presiding officer and to reasonable limitations as to time and number of witnesses. (emphasis added).
In Mercurio, supra, objectors complained that they were deprived their right to cross-examine witnesses when the board refused to adjourn or extend hearings on an application for a variance due to the objector's illness. The hearings were conducted over several days and the objectors were held to have had sufficient opportunity to cross-examine the applicant and witnesses at the first two days of the hearing, notwithstanding the fact that the objector could not attend on subsequent days. The court further noted that "[e]ven if the Board's failure to adjourn here was erroneous, and we do not so hold, in light of the fair and thorough hearing conducted, this would not provide a basis for overturning the variance." Id. at 335, 666 A.2d 1368.
In the present case, the record makes clear that the public was afforded a fair opportunity to cross-examine all witness during the course of each of the three days of hearings. Mr. Rea testified extensively as to the anticipated effect of the proposed use of property on neighborhood traffic and was available for cross-examination by the public on each of the first two days. He was also subject to extensive cross-examination by the Board. It was not until the third day of hearings that a member of the public expressed dismay in being unable to cross-examine Mr. Rea as to his conclusions concerning traffic. On the third day, Mr. Rea was not available, but Edward's two other witnesses were present and prepared to answer *1005 questions. Given the public's opportunity to cross-examine Mr. Rea during the first two days of hearings, and given the extensive testimony received by the Board regarding traffic and other concerns, it cannot reasonably be said that interested parties were deprived their right to cross-examine witnesses. Mr. Rea's unavailability on the third day of hearings did not significantly impair the public's ability to determine his credibility or test the merits of his conclusions. The subject of traffic safety was thoroughly explored during the extensive testimony of the first two days of the proceedings. Therefore, it was within the Board's discretion to limit testimony on the subject and its decision to do so based on the unavailability of the traffic expert was not an abuse of that discretion.
VI. WHETHER THE BOARD'S RESOLUTION APPROVING THE APPLICATION WAS ADEQUATE AND LEGALLY SUFFICIENT
LHA contends that the resolution adopted by the Board is grossly inadequate and legally insufficient insofar as it does not contain ample findings of fact and conclusions of law. LHA points specifically to the lack of any mention in the resolution that the conditional use "does not substantially impair the use and enjoyment of the surrounding properties and does not substantially impair the character of the area" in conformance with CLDO sec. 136-35A which provides:
all conditional uses shall be subject to site plan review. A conditional use shall not be approved unless it is found that it meets all the requirements of this chapter, does not substantially impair the use and enjoyment of surrounding properties and does not substantially impair the character of the surrounding area.
These requirements are similar to the negative criteria (variance can only be granted if it would be without substantial detriment to the public good and that it would not substantially impair the interest and purpose of the zone plan and zoning ordinance) that must be met by an applicant for a variance under N.J.S.A. 40:55D-70.
Resolutions of municipal boards should reflect the deliberative and specific findings of fact necessary to sustain the board's conclusions that statutory requirements for relief were or were not met. Harrington Glen, Inc. v. Mun. Bd. Adj. Bor. Leonia, 52 N.J. 22, 27-28, 243 A.2d 233 (1968); Pagano v. Zoning Bd. of Adjustment, 257 N.J.Super. 382, 608 A.2d 469 (Law Div.1992). The point of such a requirement is to allow a reviewing court to determine fairly whether the board acted properly and within the limits of its authority in granting, or refusing to grant a variance. Harrington Glen, Inc., supra, at 28, 243 A.2d 233.
The resolution at issue in the instant case adequately recounts testimony and evidence relating to each of the conditional use standards and concludes that each of the standards has been met. Moreover, this matter concerns a conditional use, and as such, and despite language of the CLDO to the contrary, the applicant need not specifically show, and the board's resolution need not recite, that the proposed use does not substantially impair the use and enjoyment of the surrounding properties and does not impair the character of the surrounding area. The conditions which an applicant must satisfy to establish a conditional use must themselves be particular and objective. Exxon Co., U.S.A., supra at 477-478, 489 A.2d 1218. "The vague criteria established in older ordinances for `special exceptions' under the former act, e.g., that the proposed exception... `will not be detrimental to other properties in the vicinity' are no longer permissible." Cox, supra at Sec. 17-2.1 (citing Cardinal Properties v. Westwood, 227 N.J.Super. 284, 547 A.2d 316 (App.Div.1988)). That section of CLDO Sec. 136-35A which appears to require a conditional use applicant to prove negative criteria is inapplicable due to its lack of specificity. The criteria embodied in this section of the ordinance are no more particular or objective than those contained in the ordinances voided in Cardinal Properties, supra, and Loscalzo v. Pini, 228 N.J.Super. 291, 549 A.2d 859 (App.Div.1988), certif. den. 118 N.J. 216, 570 A.2d 972 (1989) *1006 for lack of specificity and are therefore invalid.
In addition to being invalid for lack of specificity, that section of the Cranford ordinance contravenes the balance of power struck between the planning and zoning boards as embodied in New Jersey's Municipal Land Use Law. Again, this court is persuaded by the reasoning and problem recognized by Professor Cox in his treatise:
if the planning board were to deny conditional use approval based upon noncompliance with the [negative criteria] ... conditions, the board of adjustment would be unable to grant a d(3) variance (which requires a determination that the proposed noncomplying conditional use would not substantially impair the zone plan) without contravening the planning board's prior action. Viewed in this light, it is clear that the [negative criteria condition] ... result[s] in the planning board's usurpation of the board of adjustment's function. Cox, supra.

Municipal ordinances cannot serve to shift the balance of power established between these boards by the Legislature of this state and cannot, therefore, include the negative criteria as a specific requirement which must be satisfied to establish a conditional use. Furthermore, in a given case where the negative criteria would purport to be a specific requirement for a conditional use, and an applicant was unable to satisfy that requirement, any subsequent attempt by the applicant to seek relief from that requirement from the board of adjustment would be an exercise in futility insofar as the applicant would be required to demonstrate compliance with the negative criteria in order to secure a variance. The circularity caused by imposition of a negative criteria requirement in a conditional use application would make satisfaction of those criteria an absolute and a condition precedent to the grant of all conditional uses in Cranford. The absolute and unwaivable nature of this requirement contravenes public policy and the fundamental concepts of equity and fairness which underly land use and zoning law.
Furthermore, this court must emphasize that a conditional use is a permitted use in the zone as long as all the conditions are satisfied. N.J.S.A. 40:55D-3. If all the conditions are met, and this court finds that all the conditions have been met, Edwards has no reason to seek a variance from the terms of the zoning ordinance. A "negative criteria" requirement would transform a conditional use, which is a permitted use, into a non-permitted use and would transform a conditional use application into an application for a use variance. This, too, was not the intention of the Legislature. Consequently, Edwards was not required to show and the Board was not required to consider the negative criteria in this case.
VII. WHETHER THE PLANNING BOARD'S APPROVAL OF THE SITE APPLICATION WAS ARBITRARY AND CAPRICIOUS
Finally, LHA claims that the Board's decision was otherwise arbitrary and capricious insofar as the evidence adduced during the proceedings did not support the Board's conclusion that the site plan provided "safe and efficient vehicular and pedestrian circulation and loading" in accordance with CLDO sec. 136-22 which requires same and pursuant to N.J.S.A. 40:55D-41b. Again, this court does not agree.
It is axiomatic that a municipal board's decision will not be reversed unless it is found to be arbitrary and capricious. Kramer, supra. The decisions of municipal boards are somewhat insulated from attack insofar as these boards are allowed wide latitude in their delegated discretion and their decisions benefit from a presumption of validity. Rexon v. Bd. of Adjust. of Borough of Haddonfield, 10 N.J. 1, 89 A.2d 233 (1952); Ward. v. Scott, 16 N.J . 16, 23, 105 A.2d 851 (1954). It is the burden of the party challenging the board's decision to show that the board's decision was unreasonable. Kramer, supra.
Upon review of the transcript and exhibits of the three-day proceedings before the Board, this court concludes that the Board's decision in approving the site plan application with waivers and conditions was based on a sufficient volume and quality of competent evidence and that such decision was not unreasonable. The voluminous expert and public testimony regarding vehicular and pedestrian traffic at and around the *1007 proposed grocery store site spanned dozens of transcript pages. Concerns were expressed and proposed solutions were addressed. The same is true of the testimony concerning the waivers and exceptions. Each element of each statutory and ordinance requirement was adequately addressed during the proceedings before the Board. The Board's ultimate decision appears to be based on the evidence and was not arbitrary or capricious.
For all of these reasons, the Board's decision is affirmed.
NOTES
[1] Though Edwards was under contract to purchase the subject property when site plan and conditional use approval were sought from the planning board, and though Edwards terminated its interest in that property during the pendency of the instant proceedings, the instant appeal of the board's decision remains justiciable insofar as the fee owner of the property is a defendant interested in an affirmance of the board's decision.
[2] At oral argument, focus centered on the applicant's failure to satisfy the CLDO requirement that at least 10% of the parking area be set aside and properly landscaped to increase aesthetics and minimize glare, noise and other pollution. The Board ultimately granted the applicant a waiver from this requirement permitting 7.5% landscaping of the parking lot area.
[3] N.J.S.A. 40:55D-51(b) provides that a planning board acting on a site plan application:

... shall have the power to grant such exceptions from the requirements for site plan approval as may be reasonable and within the general purpose and intent of the provisions for site plan approval of an ordinance adopted pursuant to this article, if the literal enforcement of one or more provisions of the ordinance is impracticable or will exact undue hardship because of peculiar conditions pertaining to the land in question.